■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v. CLARENCE JONES, Appellant.— Judgment of the Supreme Court, Kings County, rendered July 11, 1967, convicting defendant of manslaughter in the first degree, upon a jury verdict, affirmed. We are of the opinion that there was no reasonable hypothesis or version of the facts upon which defendant could have been found guilty of the lesser crime of assault in the third degree and acquitted of the crime of manslaughter in the first degree. Nevertheless, even if it be assumed that the trial court erred in failing to charge as to such lesser crime, in the absence of exception or request to charge, such error does not mandate a reversal. In the absence of any exception this court has no power (even

assuming the charge was erroneous) to reverse on the law because of defects now said to be found in the charge (*People* v. *Cohen*, 5 N Y 2d 282, 290). We may reverse, of course, in the interests of justice regardless of exceptions or requests to charge (*People* v. *Kelly*, 12 N Y 2d 248). However, we decline to exercise that power on the present record where the proof overwhelmingly established the guilt of defendant of the crime for which he was convicted (cf. *People* v. *Papineau*, 31 A D 2d 781; *People* v. *Palmer*, 26 A D 2d 892). Beldock, P. J., Christ, Brennan and Rabin, JJ., concur; Benjamin, J., dissents and votes to reverse the judgment and to order a new trial, with the following memorandum: Defendant was indicted by the Kings County Grand Jury for manslaughter in the first degree and for assault in the second degree (two counts). In his charge to the jury the Trial Judge on his own motion withdrew from the jury's consideration the two counts of assault. The trial was rife with error. No attempt was made by trial counsel to protect the record, to take any exceptions or to make any requests concerning erroneous admission of evidence, erroneous rulings and errors in the charge. Pretrial motions requisite to protect the constitutional rights of defendant, obviously indicated by the record, were not made. In short, it can hardly be said that this defendant had the benefit of adequate counsel for the preparation and trial of this important case. Ford, a witness for the People, testified that he saw defendant and the decedent begin to fight while sitting on a park bench. Defendant fell and the decedent ran away. The witness ran after the decedent who fell, arose and continued to run until the witness caught him. The decedent was hit by the witness and then by defendant. As the witness and defendant were walking away, defendant told the witness that he had stabbed the decedent, but, because the witness did not believe what he heard, he walked back and saw blood on the ground. At the time defendant told the witness that he had stabbed the decedent, the witness saw that defendant had a leather knife case in his hand which he was putting in his belt. The witness said he saw defendant put a knife in the case. Then the witness said he saw the handle of the knife when defendant placed it in his belt. On cross-examination, the witness admitted a conviction for possession of a weapon. He also admitted that his brother had a scabbard similar to the one he saw in defendant's possession. Detective James Porter, a witness for the People, testified that on May 22, 1966 at about 1:00 A.M. defendant was brought into the police station by detectives from the Homicide Squad and was turned over to him. Clothing belonging to defendant was brought in a shopping bag. The clothes were analyzed by the medical examiner because of certain stains on them. The shirt and jacket were offered in evidence without objection. Viola Jones, a witness for defendant, the wife of defendant, testified that when she went home she found two detectives and John Ford looking for defendant. While they were talking, defendant arrived and he was arrested and taken to the police station. Later, the two detectives returned to pick her up. One of the detectives saw her husband's clothes lying on a chair and asked her if they were her husband's. When she replied that they were, he put them in a bag and took them to the station house. Defendant testified in his own behalf. He admitted to two convictions for felonies, without weapons. He said he had a fight on the street corner, but he could not remember the event very well. The decedent struck or pushed him and ran away. Ford ran after the decedent, and defendant followed in a dazed condition, because he had been drinking. When defendant reached the decedent after Ford, he started to swing at the decedent, but Ford said, " Come on, man, I got him." Ford went back to see if the decedent had any money; and defendant walked back to the stoop next door to the bar. There he met

one of his wife's friends and at her request, because he was drunk, he went to her apartment to lie down. His wife came up there later and returned home without him. Soon after, he returned home and found two detectives and John Ford waiting for him. Defendant was taken to the station house and was questioned. He told the detectives about the fight and said he had changed clothes that night. The detective took him home, obtained his shirt and jacket and at the same time took his wife to the station house. Defendant denied he had a knife in his hand or that he stabbed the decedent. The knife used in the stabbing was not produced at the trial. As above stated, defendant was indicted for manslaughter in the first degree and for assault in the second degree (two counts) and in the charge to the jury, the court withdrew from the jury's consideration the two charges of assault. No charge regarding accomplice testimony was made and the court sent the case to the jury only on charges of manslaughter in the first and second degrees. There were no exceptions taken; nor were any requests as to the charge made, despite the error in failure to charge the lesser counts contained in the indictment or to instruct the jury with respect to the law relating to testimony of an accomplice. On cross-examination of Detective Porter and on the direct testimony of defendant, it was brought out that there had been in-custody interrogation of defendant and that during such iinterrogation he had made inculpatory admissions. Defendant's attorney made no motion for the return of the improperly seized clothing or for suppression of the contraband evidence pursuant to the Code of Criminal Procedure (§§ 813-c, 813-d, 813-e) and made no motion for suppression of the confession and admission pursuant to the Code of Criminal Procedure (§§ 813-g, 813-h, 813-i). This was a post-*Miranda* case. The following rules from *Miranda* v. *State of Arizona* (384 U. S. 436, 479) apply: " He must be warned prior to any questioning that he has the right to remain silent, that anything he says can be used against him in a court of law, that he has the right to the presence of an attorney, and that if he cannot afford an attorney one will be appointed for him prior to any questioning if he so desires. Opportunity to exercise these rights must be afforded to him throughout the interrogation. After such warnings have been given, and such opportunity afforded him, the individual may knowingly and intelligently waive these rights and agree to answer questions or make a statement. But unless and until such warnings and waiver are demonstrated by the prosecution at trial, no evidence obtained as a result of interrogation can be used against him." In this case the record is silent as to whether the required warnings were given to defendant while he was at the police station and the record is also silent as to whether a waiver was given. The prosecution therefore failed to lay an introduction for the receipt of the confession by offering evidence of compliance with the rules set forth in *Miranda*. The clothes belonging to defendant were obtained in his home without a search warrant and were received in evidence without any objection by defendant's attorney. If he had been reasonably competent he would have made a motion to suppress. No exception is necessary to preserve for appellate review a deprivation of a fundamental constitutional right (*People* v. *McLucas*, 15 N Y 2d 167). The trial court also committed error when it failed to submit to the jury the question of whether the witness Ford was an accomplice of defendant. Defendant's attorney neither excepted nor made a request for a proper charge. Finally, the trial court withdrew from the consideration of the jury the lesser crime of assault and again no exception was taken or request to charge made by defendant's attorney, despite the clear mandate to submit such lesser counts to the jury. In my opinion, on the evidence in the case, the jury could have found that defendant did not stab the decedent, but assaulted him before and after Ford had stabbed him. The blood

of the decedent could have stained the clothes of defendant after the decedent had been stabbed by Ford. The trial court should not have withdrawn from the jury's consideration the assault counts. The jury was confronted with the difficult choice of freeing defendant or finding him guilty of the crime of manslaughter. If this had been the only occasion when defendant's attorney did not make any objection, it might have been considered a trial tactic. But where the record is replete with default in protecting the rights of defendant such as the total failure to make appropriate pretrial motions, the failure of defendant's attorney to except or to request an appropriate charge when the Trial Judge withdrew the assault charges from the consideration of the jury was not in my opinion a trial tactic but merely an extension of default through ineptitude. The lesser crime of assault specified in the indictment should have been charged " [since] there [was] some basis in the evidence for finding the accused innocent of the higher crime, and yet guilty of the lower one" (*People* v. *Mussenden*, 308 N. Y. 558, 563). Where the trial court committed such error in its charge and there was failure by defendant's counsel to request a proper instruction, this court nevertheless is empowered to order a new trial in the interests of justice (*People* v. *Askew*, 19 A D 2d 130; *People* v. *Curtis*, 8 A D 2d 183; Code Crim. Pro., § 527). Because of the total failure of defendant's attorney to make proper objections and take required exceptions, the trial was a travesty of legal inadequacies of defendant's counsel and, in the interests of justice, we should exercise our power to reverse and order a new trial (*People* v. *Kelly*, 12 N Y 2d 248).