■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v ELWOOD A. MILES and GARY SCOTT, Appellants.—Appeal by defendants from two judgments of the Supreme Court, Queens County, rendered July 5, 1973 as to defendant Scott, and July 6, 1973 as to defendant Miles, convicting them of possession of weapons and dangerous instruments and appliances, as a felony (two counts), and criminal possession of a dangerous drug in the sixth degree, upon jury verdicts, and imposing sentences. These appeals also bring up for review so much of an order of the same court, dated May 21, 1973, as denied appellants' motion to suppress evidence. Judgments reversed, on the law, and new trial ordered. Order affirmed insofar as reviewed. A brief recital of the factual background should prove helpful. On January 3, 1973, at about 1:30 A.M., two police officers in a patrol car heard over their radio that a robbery and mugging had been perpetrated on a street in their vicinity. The information divulged gave a general description of the four men involved and also a description of the automobile used in the furtherance of the crime, including the fact that it was a Buick with blue and white plates. Within minutes thereafter the police officers espied a car answering the description, in which four men were seated. They flagged down the car and investigated. One officer (Matthews) interrogated the driver from one side of the vehicle; the other (Engel) took his position on the opposite side. A physical examination of the car produced a .22 calibre pistol on the front seat, a .38 calibre revolver on the rear seat and some glassine envelopes on the floor of the tonneau of the car. Lomax, a front seat passenger, had a .22 calibre cartridge on his person. We have reviewed defendants' contentions and find three basic, prejudicial defects in the proceedings, the appropriate remedy for which is a new trial. (1) There were sharp conflicts in many items of testimony bearing upon Officer Matthews' ability to obtain the "plain view" of the .22 calibre revolver which he claimed to have seen on the front seat of the Buick. The resolution of those conflicts bore upon the question whether the initial arrest (with its ensuing intrusion into the front seat) was in fact for possession of a weapon or whether it was for suspicion of the unrelated robbery and mugging. The Buick itself had been released to a salvage company shortly after a criminal court hearing, in which it had been made evident that there would be sharp questions of fact as to whether the vehicle had interior lighting. In addition, Matthews' handling of the contraband is alleged by the defense to have precluded the recovery of fingerprints and, accordingly, to have increased to four the number of possible prosecutions by virtue of the statutory presumptions applicable to occupants of an automobile in which a weapon is found (Penal Law, § 265.15, subd 2). It would have been advisable for the People to have called Patrolman Engel, Matthews' partner, to testify at the suppression hearing, as his testimony would have been neither trivial nor cumulative *(People v Brown,* 34 NY2d 658). At the trial he should certainly have been produced as a witness; the failure to call him would have entitled the jury (under appropriate instructions) to draw the inference that his testimony would have been adverse to the prosecution (see *People v Brown, supra; People v Valerius,* 31 NY2d 51). Although requested to so charge, the trial court refused to give the appropriate instruction, to the consequent detriment of defendants. (2) At the trial, the prosecutor's cross-examination of defendant Miles suggested that defendants had engaged in the robbery.

The prosecutor pursued this line of inquiry even though defendants had not been arrested for or charged with the robbery. There was no proof of any involvement by them in that crime. Outside of the presence of the jury, Miles' attorney requested that the record reflect the source of the prosecutor's questions, as he appeared to be reading from a paper. The trial court observed that the prosecutor appeared to be reading from Grand Jury minutes. We note, however, that the record does not spell out, summarize or give the essence of the Grand Jury testimony or evidence upon which the prosecutor based his questions. Under the circumstances, there was no basis upon which it can be said that the prosecutor's incriminatory questions had a reasonable basis in fact (see *People v Alamo*, 23 NY2d 630). (3) Although the trial court marshalled the People's evidence, it did not adequately marshal the evidence in support of the defense contentions or sufficiently explain the application of the law to the facts. This inadequacy bore particularly on the subjects of the rebuttability of the presumption arising from the presence of contraband in the vehicle and of requisite criminal knowledge. At the trial Scott requested that he be allowed to represent himself. His request was denied. If, on the retrial, he manifests a sincere desire to act as "his own lawyer", the trial court should indulge his request and may, if it sees fit, assign an attorney to assist him in the examination and cross-examination of witnesses and to counsel him in the amenities of courtroom procedure. Latham, Acting P. J., Cohalan, Christ, Munder and Shapiro, JJ., concur.