THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v NICHOLAS MUSOLINO, Appellant.

Third Department, August 5, 1976

*Jay Goldberg (Gretchen White Oberman* of counsel), for appellant.

*Emanuel Gellman, District Attorney (Henri Shawn* of counsel), for respondent.

MAHONEY, J. On the evening of August 9, 1972 Peter Salanardi and defendant, Nicholas Musolino chauffered decedent, Carlo Lombardi, and his friend, Elizabeth Brices, from a Secaucus, New Jersey motel to Sullivan County. Lombardi, fearing that an underworld enemy had learned of his whereabouts, had agreed to go to Salanardi's hideout near Monticello. The defendant was driving, with Salanardi in the front next to him. Decedent and Brices were in back. Brices testified that as they arrived in Monticello, the defendant pulled off the main highway onto a side road, whereupon both he and Salanardi turned and fired pistols, Salanardi's shots killing Lombardi and a single shot fired by defendant passing through her neck. The victims were thrown in a ditch beside the road.

Musolino was arrested some months later and indicted along with Salanardi for the murder (Penal Law, § 125.25, subd 1) of Carlo Lombardi and the attempted murder (Penal Law, §§ 110.00, 125.25, subd 1) of Elizabeth Brices. Musolino was tried alone, since Salanardi had not been found.

At trial the defendant admitted driving to Monticello as described by Brices, but claimed that he and Salanardi were unarmed. According to Musolino, as the car approached Monticello, the decedent threatened to kill Salanardi, who then reached into the back seat and pulled out the pistol he knew was in decedent's belt. Shots were fired in the struggle, killing Lombardi and wounding Brices.

The jury convicted defendant on both counts. All three grounds urged for reversing the conviction concern supposed improper procedure by the prosecutor, to wit: (1) cross-examining the defendant as to his silence when arrested; (2) suggesting to the jury that defendant's trial counsel helped him construct a plausible exculpatory version of the shooting; and (3) delivering an inflammatory summation.

On cross-examination the defendant was asked why he had not explained the details of his innocence to the arresting officers. Defense counsel interrupted—"Your Honor, I object to —withdrawn." Since permitted to continue this line of cross-examination, the prosecutor asked the defendant "When you

remained silent and didn't say anything to the police, had you made up your mind yet as to whether you were going to * * * tell in Court the story you told this morning, or whether you were going to say that you weren't in the car the night that the shooting happened"? Defense counsel failed to preserve for review the question of whether it was proper to use the defendant's post-arrest silence to impeach his testimony (CPL 470.50, 470.15). Therefore, the conviction may be reversed on this point only if the error so varied from lawful procedure that "the entire trial [was] irreparably tainted" *(People v Patterson,* 39 NY2d 288, 296) or "as a matter of discretion in the interest of justice" (CPL 470.15, subd 3, par [c]).

The nature of the unobjected-to error bears on whether it should be reviewed. Up until the decision in *People v Rothschild* (35 NY2d 355), the rule in New York appeared to be that a defendant's silence after arrest could not be used against him at trial for any purpose (cf. *People v Christman,* 23 NY2d 429; *People v Travato,* 309 NY 382; *People v Felcone,* 43 AD2d 976, 977; Richardson, Evidence [10th ed], § 222). The courts had refused, purely as a matter of common law, to extend the admission by silence doctrine to a defendant's silence while in police custody since: "No cautious person, when in custody, accused of crime would care to enter into a discussion of his guilt or innocence with his captors * * * when what he said might be used against him. *(People v Rutigliano,* 261 NY 103, 107).

However, the Court of Appeals in *Rothschild (supra),* limiting the prior cases to their facts, held that the prosecution was only precluded from using defendant's silence in its *direct* case. A defendant's silence during police custody, if "patently" inconsistent with his testimony at trial, could be used on cross-examination as a prior inconsistent statement to impeach his credibility.

The United States Supreme Court refused, as a matter of Federal common law, to permit such use of post-arrest silence in the Federal courts *(United States v Hale,* 422 US 171) and has very recently imposed the same strict rule on the States via the due process clause of the Fourteenth Amendment *(Doyle v Ohio,* 426 US 610). The Court concluded that, in light of the *Miranda* warning, a defendant's post-arrest silence is so thoroughly ambiguous that its impeachment value is nil, and therefore it would be fundamentally unfair for the prosecu-

tion, even on cross-examination, to put such silence before the jury.

As noted above, the threshold problem is whether the cross-examination should be reviewed, either under the rule of *People v Patterson (supra)* or in the interest of justice. In *Patterson* the court was asked to rule sections 125.20 and 125.25 of the Penal Law, to the extent they place the burden of proving extreme emotional disturbance on the defense, unconstitutional. The United States Supreme Court had recently struck down a similar affirmative defense provision in a Maine statute on the ground that due process requires the States to prove each element of a crime beyond a reasonable doubt (see *Mullaney v Wilbur,* 421 US 684). Before reaching the merits in *People v Patterson (supra),* the Court of Appeals had to decide whether the question was properly before it since the defendant had failed to raise the constitutional issue at trial.

Since the Court of Appeals did not have the power to review the unobjected-to matter in the interest of justice (unlike the Appellate Division), it resorted to a narrow line of authority avoiding the requirement of timely objection. Where a defendant is tried by a jury of less than 12 *(Cancemi v People,* 18 NY 128) or is prosecuted for an "infamous" crime absent a Grand Jury indictment *(People ex rel. Battista v Christian,* 249 NY 314), "the procedure * * * is at a basic variance with the mandate of law [and] the entire trial is irreparably tainted." *(People v Patterson, supra,* p 296.) The court held that since the challenge before it, pertaining as it did to whether the burden of proof had been constitutionally allocated, called into question the validity of the entire trial , it warranted a review on the merits.

The error alleged here is not of such pervasive nature. The exemption found controlling in *Patterson* applies where the entire structure of the guilt-determining process is flawed.*

---

* The one case which seems to broaden the exception is *People v McLucas* (15 NY2d 167), where the trial court's comment on the defendant's failure to take the stand, even though not protested, was held ground for reversing the conviction. In *Patterson* the court suggests that *McLucas* might be an eccentric decision *(People v Patterson, supra,* p 295). But even if it has continued vitality, the cross-examination error here is distinguishable from the improper comment error in *McLucas.* Making adverse comment on a defendant's refusal to testify injects the trial with a general, undifferentiated "taint". It encourages the jury to assess every question with prejudice in favor of the prosecution, since the defendant has not taken the opportunity to tell his side.

The erroneous cross-examination as to defendant's post-arrest silence placed a piece of improper evidence before the jury, but it did not warp the rules or procedure by which the other evidence was to be evaluated.

Since the question of law has not been preserved, the conviction may be reversed only "as a matter of discretion in the interest of justice" (CPL 470.15, subd 3, par [c]). Whether this discretion should be exercised is in large part determined by the extent of harm done to defendant's case by the unobjected-to error (cf. *People v Cooper*, 31 AD2d 814; *People v Moore*, 20 AD2d 817). Overwhelming proof of guilt indicates that the interest of justice would not be served by reversal *(People v Jones*, 32 AD2d 1069, affd 27 NY2d 501, cert den 400 US 994). In this respect the interest of justice is related, although certainly not identical, to the doctrine of harmless error. In *People v Crimmins* (36 NY2d 230) the court, making a comprehensive review of the harmless error doctrine, stated that two factors must be considered to determine if error had been harmless, to wit, "the quantum and nature of proof of the defendant's guilt if the error in question were to be wholly excised" and "the causal effect which * * * the particular error may nonetheless have had on the actual verdict" *(People v Crimmins, supra,* p 240).

The proof of guilt in this case was strong. There was no question of identity. The only question was whether Elizabeth Brices told the truth when she described the shooting. She had no motive to lie, and was unshaken despite a lengthy, thorough cross-examination. The defendant's version, in addition to being suspect since self-serving, was most improbable. He testified that the decedent, Lombardi, although armed with a pistol in his belt and a machine gun at his feet, declared to Salanardi (the defendant's front-seat companion) "I'm going to kill you, Sonny" *before* he (Lombardi) began to bend down for the machine gun. Because of the early warning, the unarmed Salanardi had time to reach back, remove the pistol from decedent's belt, and shoot him with it twice in the head.

Since defendant's story is virtually incredible to begin with, no substantial harm was done by the prosecution's suggestion that the story, not having been told to the arresting police, must have been fabricated at the time of trial. The inconsequential error here contrasts with the effect of the error in *Doyle v Ohio (supra)*.

In *Doyle* the defendants were convicted of selling 10 pounds

of marijuana to a police informant named Bonnell, described by the Supreme Court as a "street person" with a long criminal record who co-operated with the police in order to obtain leniency in his current legal problems. According to the State's witnesses Bonnell, at police request, arranged to purchase marijuana. Bonnell said he needed $1,750, but the police were able to raise only $1,320. Bonnell drove off alone to the parking lot exchange point with the $1,320, four narcotics officers following. After the transaction the defendants left the parking lot in their own vehicle, but soon discovered that they had been paid $430 less than the agreed price and therefore circled back looking for Bonnell. They were stopped by police upon radio instructions from the agents who had followed Bonnell. A search of the car revealed the $1,320.

The defendants' version of these events was the same, except that they swore Bonnell had framed them. Defendants testified that it was Bonnell who offered to sell the 10 pounds of marijuana. When they arrived at the parking lot to exchange their money for Bonnell's marijuana, they told him they only wanted one or two pounds. Bonnell then threw the $1,320 into defendants' car and drove off. They pursued Bonnell to find out why he had done this extraordinary thing.

Since the narcotics officers' view of the exchange was obstructed, they could not clearly resolve the question of who was selling to whom (see *Doyle v Ohio, supra,* nn 2 and 3, p 612). But the prosecution had another weapon: the defendants' failure to mention to the arresting officers the bizarre action of Bonnell. The use of this post-arrest silence to impeach harmed the defendants in *Doyle* much more than the impeachment use of Musolino's silence harmed him.

To begin with, the physical circumstances in *Doyle* were consistent with either story. The jury was forced to choose between the defendants' version and Bonnell's without the objective guidance which the jurors judging Musolino and Brices had. Brices' testimony was completely consistent with the physical circumstances of the shooting, whereas Musolino's was not. Moreover, Elizabeth Brices, as far as the record shows, had no reason whatsoever to falsely accuse Musolino. Bonnell had some reason to falsely accuse.

Most important in distinguishing this case from *Doyle* is the force of the improper impeachment. In *Doyle* the defendants were arrested a matter of minutes after the exchange. A jury might well hold against them their failure to mention to the

arresting officers the remarkable way the $1,320 got into their car, especially since Bonnell might have been quickly apprehended in the rural Ohio setting and asked to answer the accusation. Musolino was arrested months after the shooting by officers who had nothing to do with the investigation of the crime. There was no apparent way the telling of his exculpatory version might affect the charge against him or lead the police to the true criminal.

In sum then, the error below did not substantially prejudice the defendant since: (1) the proof of guilt was strong, (2) the error only served to impeach what was very nearly an incredible story *ab initio,* (3) the impeachment impact of Musolino's post-arrest silence was mild, in contrast to *Doyle v Ohio (supra);* here silence was more consistent with innocence than in the remarkable case of *Doyle.* Defense counsel on appeal points to no other reason why the interest of justice warrants reversal in this case.

Next presented is whether the prosecutor's efforts to impeach defendant on cross-examination by asking how long he had conferred with his attorney in preparing to testify violated the Sixth Amendment right to counsel. Dictum in a recent Supreme Court decision indicates that such impeachment tactics are permissible:

"A prosecutor may cross-examine a defendant as to the extent of any 'coaching' during a recess, subject, of course, to the control of the court. Skillful cross-examination could develop a record which the prosecutor in closing argument might well exploit by raising questions as to the defendant's credibility, if it developed that defense counsel had in fact coached the witness as to how to respond on the remaining direct examination". *(Geders v United States,* 425 US 80.)

It is possible to interpret this dictum to permit comment on a defendant's consultation with his attorney only when "[s]killful cross-examination" induces the defendant to admit he was coached. But, even if it was improper for the prosecutor in summation to question the defendant's credibility by pointing to the four and one-half hour session, such comment was harmless. As with the use of the post-arrest silence, it only tended to discredit a story which free from prosecution attack could hardly be believed.

Defendant also contends that two other portions of the prosecutor's closing argument were inflammatory. No objec-

tion to these portions was made, and they do not require reversal in the interest of justice.

The judgment should be affirmed.

KOREMAN, P. J., GREENBLOTT, HERLIHY and REYNOLDS, JJ., concur.

Judgment affirmed.