■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v DANNY PRYOR, Appellant.—Judgment, Supreme Court, Bronx County, rendered

March 8, 1978, after a jury trial convicting the defendant of the crime of robbery in the first degree (two counts), reversed, on the law and as a matter of discretion in the interest of justice, and the matter remanded for a new trial. The defendant, Danny Pryor, participated together with two others in an armed robbery of the Twilight Lounge in The Bronx. Pryor's defense was that he was forced by the two others to participate in the crime. The dissent views the defense interposed as tenuous; however, we are reversing and remanding for a new trial because of cumulative errors which occurred. Defendant, though he may be ultimately found guilty, is entitled to a fair trial. We cannot say with the certainty of the dissent that there is no significant probability that, had the cumulative errors not occurred, defendant would not have been acquitted (see *People v Crimmins*, 28 NY2d 407, 412). The major error committed was in instructing the jury about the defense of duress. Subdivision 1 of section 40.00 of the Penal Law defines the defense as arising when a "defendant engaged in the proscribed conduct because he was coerced to do so by the use or threatened imminent use of unlawful physical force upon him or a third person, *which force or threatened force a person of reasonable firmness in his situation would have been unable to resist*" (emphasis added). The court instructed the jury that to find that the defendant acted under duress they must find that "the compulsion must be present and immediate and of such a nature as to induce a well-founded fear of impending death or serious bodily injury." The standard imposed by Trial Term is a more stringent one than required by statute and is based on section 859 of the old Penal Law. Though counsel for the defendant did not object to this instruction, we, as a matter of discretion in the interest of justice, find that this error deprived the defendant of a fair trial (CPL 470.15, subd 6, par [a]). Additional error crept in during the course of the trial. During the examination of character witnesses, defense counsel was erroneously precluded from inquiring whether defendant lacked a bad reputation *(People v Malinowski*, 43 AD2d 189). On cross-examination of another character witness, the District Attorney, over defendant's objection, asked the witness whether he would change his mind if he knew that the defendant had committed the present robbery. We have recently held this type of question improperly assumes that the defendant was guilty of the crime with which he is charged, and is one which should be avoided *(People v Lopez*, 67 AD2d 624). These errors regarding the examination of the character witnesses are most critical in the case at bar, since defendant had no prior record of either juvenile or adult offenses, and had a generally creditable background. The character evidence, if fully developed at trial and believed by the jury, could have created a doubt as to the truthfulness of the positive evidence presented sufficient to warrant acquittal *(People v Miller*, 35 NY2d 65). Furthermore, the jury may have been swayed by comments of the prosecutor complaining that all the defendant had to do was to get one juror "second-guessing" and there would be no verdict, and inferring that the defendant grew up in a neighborhood where he could not easily be the subject of intimidation or duress. We find that these cumulative errors deprived the defendant of a fair trial and create a significant probability that, had they not taken place, defendant may have been acquitted. We have therefore directed a new trial. Concur—Murphy, P. J., Sandler, Lane and Markewich, JJ.

Silverman, J., dissents in a memorandum as follows: I would affirm the judgment of conviction. There is no dispute that there was an armed robbery by three men; that defendant was one of those three men; that he carried a loaded pistol; that he at one point exchanged the pistol with the

other perpetrator for a loaded shotgun; and that he was one of the robbers. The defense was that the defendant was acting under duress. The claim of duress is ludicrous. According to defendant, the other two robbers approached him in a bar at about 9:00 P.M., some 12 hours before the robbery, and one of the men discussed with defendant the possibility of committing an armed robbery. When the defendant stared at him, the man said you are going to participate and the other man, who kept his hand in his pocket, said that defendant was going to participate or he was not going to leave the bar. That ended defendant's protests. He never saw or was told what the man was holding in his pocket. The three men then left the bar, got into a car in which they drove around silently for 12 hours looking for a place to rob, never stopping for gas and ending up 23 blocks from their starting point. They got to the social club, which was the scene of the robbery, and one of the men took from the trunk of the car (not from his pocket) three guns, and thrust upon defendant a loaded pistol in a holster which defendant put in his pocket. Immediately thereafter, defendant, in fear of his life and holding the loaded pistol, participated in the robbery even though at times the other robbers were not facing him. In the course of the robbery, one of the other robbers gave defendant his loaded shotgun and defendant gave the other robber his loaded pistol. When the other two robbers left, one of the robbers instructed defendant to wait and hold his gun on the people. The other robber dropped the bag of loot and ran out. Defendant remarked to the patrons and victims, "Why don't we have a drink while we are waiting." A police alarm had been given. Defendant hearing a police walkie-talkie placed his shotgun near the door and attempted to leave. Confronted by a police officer, he said to the officer, "They are robbing the place in there." Unfortunately, the police officer discovered that defendant was wearing a holster and this apparently impaired his credibility. Defendant never suggests what there was about his name or fame or skills that made two unknown men decide to kidnap him for the purpose of engaging him in an armed robbery, or by what insanity they placed a loaded pistol and loaded shotgun in his hands, or how they all had the physical stamina to drive around for 12 hours with never an opportunity for defendant to escape. In accordance with the classic pattern, defendant furnished no identifying information as to his cohorts (beyond the gross facts of physical size which were of course obvious to the people in the social club); he did not notice the make or any part of the license plate number of the car in which he had spent the long night and at the trunk of which he stood while his cohorts took the guns from the trunk. I agree with my colleagues that most of the matters they deem errors were indeed errors. But in the face of the admitted facts and the ludicrous claim of duress, I cannot think that it makes any difference. This is truly a case where the evidence of guilt is overwhelming. "Nonconstitutional error * * * is harmless when, given the overwhelming proof of a defendant's guilt, there is no significant probability that the jury would have acquitted the defendant if the error had not been committed" (People v Crimmins, 38 NY2d 407, 412). In this case, given the admitted facts of the defendant's participation in the robbery and the ludicrous defense of duress, there is no significant probability that the jury would have acquitted the defendant if the errors had not been committed. The most substantial error claimed relates to the court's definition of the standard of compulsion that constitutes duress. The court first read the statute, including the proper standard, "the use or threatened imminent use of unlawful physical force upon him [defendant] or a third person, which force or threatened force a person of reasonable firmness in his situation

would have been unable to resist." (Penal Law, § 40.00, subd 1.) The court then went on to discuss this standard and in the course of that discussion said the compulsion must be "of such a nature as to induce a well-founded fear of impending death or serious physical injury." Although there is arguably some support for this definition in the drafters' notes, I think that statement set an erroneously high standard. But a moment later, the court again summarized the test correctly. "The issue to be determined is whether a person of reasonable firmness, under the identical fact situation as the defendant, would have acted as the defendant acted." Thus the error was perhaps corrected. But in any event, the difference between the statutory definition and the court's gloss on it was immaterial to this case. If defendant's story was believed, it met both tests; if not, it met neither. It was precisely fear of impending death or serious physical injury that defendant was claiming, the belief that his kidnapper was holding a gun in his pocket, the threat that if he did not participate defendant would not leave the bar. Perhaps for this reason, there was no objection to the charge. In these circumstances, we nevertheless have the power to reverse "as a matter of discretion in the interest of justice" (CPL 470.15, subd 6). We should "decline to exercise that power on the present record where the proof overwhelmingly established the guilt of defendant of the crime for which he was convicted" *(People v Jones,* 32 AD2d 1069, 1070, affd 27 NY2d 501; accord *People v Musolino,* 54 AD2d 22, 26). If defendant had pointed out the error, the point could have been clarified or corrected. That after all is the point of requiring protest to a ruling at a "time when the court had an opportunity of effectively changing the same." (CPL 470.05, subd 2.) And the verdict would have been the same. Defendant should not be better off because his lawyer failed to object. The other claimed errors are less substantial.