THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v FREDERICK JACKSON, Appellant.

First Department, June 28, 1979

APPEARANCES OF COUNSEL

*Henry J. Boitel,* attorney *(Lissa Griffin* with him on the brief), for appellant.

*James D. Veach* of counsel *(Jerrold Neugarten* with him on the brief; *Robert M. Morgenthau, District Attorney),* for respondent.

## OPINION OF THE COURT

SILVERMAN, J.

Defendant appeals from his conviction, on jury verdict, of felony murder (Penal Law, § 125.25, subd 3), attempted robbery in the first degree (Penal Law, §§ 160.15, 110.00), and criminal possession of a weapon in the second degree (Penal Law, § 265.03).

In many respects the case falls into an all too familiar pattern: an attempted robbery or mugging in the course of which the victim was shot and killed. It was essentially undisputed that that was what had happened; that the attempted robbery and shooting took place in an apartment house on West 129th Street in Manhattan; that defendant's two alleged accomplices Skinner, aged 17, and Welsh, aged 15, were participants; that defendant, aged 22, was in the building with them at the time of the crime; that all three fled together immediately after the incident; and that within minutes all three were apprehended together near St. Nicholas Park, two blocks from the scene of the crime, Skinner being apparently in possession of the recently fired gun.

The only real issue for the jury was whether defendant was a participant in the attempted robbery or merely an innocent bystander. (There was a subsidiary evidentiary issue, of no legal significance as to felony murder, as to which of the three had done the actual shooting.)

Defendant said he knew Skinner and Welsh "like brothers";

saw them running ahead of him in the street; ran after them for four blocks; and when they went into the building he followed them. He saw Skinner pull out a gun and shoot a man he had seen precede them into the building. He said he panicked and ran into the park where he saw Skinner take a bullet out of the pistol, drop it on the ground, and put the pistol back in his belt.

On the question of whether defendant was a participant in the crime, the prosecution presented the following additional evidence: Both Skinner and Welsh testified that defendant was a participant and, indeed, the instigator of the crime. Skinner said defendant sent Skinner to defendant's apartment to get a pistol; Skinner did so and took a .22 caliber pistol from a dresser drawer in defendant's apartment in which there were also another larger pistol and a sawed-off shotgun. (On the strength of this statement, the police obtained a search warrant two days after the crime and found the other pistol [.32 caliber] and shotgun in the apartment and more bullets, including a .22 caliber bullet.) Both Skinner and Welsh testified that the pistol did not have any ammunition in it, so they went to defendant's grandmother's apartment where defendant got some bullets, and defendant then test-fired the gun in the stairwell of defendant's grandmother's apartment. (Later examination by the police revealed a round hole in the wall of that hallway and beneath it a piece of copper-covered lead possibly consistent with a deformed bullet.) According to Skinner and Welsh after the shooting the three then ran to the park where Jackson removed the spent cartridge from the pistol and dropped it on the ground and gave the pistol to Skinner. (Search by the police three hours later at the place indicated discovered a spent shell casing on the ground.) A police officer testified that defendant had admitted his guilty participation but defendant denied this and the officer had no notes. Defendant testified and denied everything except his presence with the explanation indicated above.

█ The major claimed error on which reversal is asked is the Judge's alleged coercion of the jury and indication that they should convict, in the Judge's supplemental instructions. I do not see that this is a fair reading of the Judge's remarks.

Apparently neither did defendant's attorney. No objection was made to any of these allegedly coercive remarks. Where proof of guilt is so clear, "the interest of justice" (CPL 470.15,

subd 6) does not require us to notice this unprotested claim of error. *(People v Jones,* 32 AD2d 1069, 1070, affd 27 NY2d 501; *People v Musolino,* 54 AD2d 22, 26.)

In any event, in context all that I see are efforts by the court to encourage the jury to arrive at a verdict by pointing out that there was nothing esoteric about the case or about the jury's task; that even in the unfamiliar environment of a courtroom all the jury was required to do was to use their common sense and resolve a question of credibility.

That I think is what the court indicated when it said, "all we are asking is that you use the same common sense that you use in your living room. I'm certain if you were alone at home it wouldn't be a problem, you would decide it in five minutes or in the barbershop as you usually hear the people talking about what happens."

It was in this sense that the court said it was not a difficult case—a simple issue of credibility in an unfortunately not unfamiliar or complicated fact setting. In *People v Pagan* (45 NY2d 725) the Court of Appeals sustained a conviction where the Trial Justice, attempting to encourage the jury to arrive at a verdict, called the case a "simple case, as far as the amount of evidence to be covered is concerned."

The Trial Judge never said anything that could be deemed coercion of the jury. He never said the jurors would be kept indefinitely or for a very long period unless they arrived at a verdict. He never told them which way they should decide. Over and over again he told them that they could convict or acquit on all counts or none or any combination of them; that it made no difference to the court which way they decided; that he would accept any verdict they brought in; that credibility was entirely up to the jury and not at all the Judge's province. "You can believe them, all of them, all of the testimony if you want or you can believe part of it or you can believe none of it. That is left to you. * * * As to believing witnesses, and finding facts, that is your province. I can't do anything about it. If you don't believe the witnesses, it makes no difference. THE FOREMAN: You don't have to believe any one of them? THE COURT: None of them. None of the witnesses you have to believe. * * * [Y]ou can believe any part that you want, but it is for you to determine what you want to believe." The only point as to which he said there was no issue of credibility was that Skinner and Welsh were there and partic-

ipated; and as to this there was indeed no dispute by anyone; even defendant testified to that.

■ The so-called *Allen* charge *(Allen v United States,* 164 US 492) given before dinner of the first day amounted to no more than the obvious statement of the desirability of the jury's agreeing if they could do so without surrendering any juror's conscientious convictions, without violating their individual judgments and conscience; that another jury would have no more information and be no more competent than this jury; that jurors should not approach their deliberations with a closed mind. This is not substantially different from the standard charge as to the jury's duty to try to arrive at a verdict without sacrificing their conscientious views and to approach their deliberations with an open mind. (Cf. *People v Ali,* 47 NY2d 920.) That this did not unduly influence the jury is apparent from the fact that on the morning following this charge they still reported an impasse and that they did not arrive at their verdict until 24 hours after this charge.

■ The Judge's statement about this not being a difficult case that would not be a problem at home or in the barbershop, and that they could decide in five minutes, was not followed by a verdict in five minutes. Instead the verdict came seven hours after that statement, and after a number of other questions from the jury, two further returns of the jury to the courtroom, and the re-reading of various parts of the testimony.

In *People v Pagan* (45 NY2d 725, *supra)* the Court of Appeals rejected a similar charge of coercion where the Trial Justice having told the jury that this was a simple case, called upon the jury to "make every effort possible to arrive at a verdict." The Court of Appeals said (p 727):

"On the other hand a trial court may properly discharge its responsibility to avoid mistrials by encouraging jurors to adhere to their oaths and make one final effort to review the evidence and reach a verdict one way or the other * * *

"Here, although the approach of the Trial Judge may not have been ideal, in essence he simply asked the jury to exert its best efforts and renew deliberations. No jurors were impermissibly singled out for noncompliance with the majority. None were improperly threatened, nor was it even suggested that the jury would be forced to continue deliberations indefinitely without any outside communication should agreement

still elude them following a renewal of their efforts to reach a verdict."

In the course of their deliberations, the jury asked the court some 25 questions, all of which the court conscientiously dealt with so that all issues of law were thoroughly and correctly explained and relevant portions of the testimony re-read.

■ "Convictions are not to be set aside because, on reflection in tranquility, better charges could have been composed." *(People v Yanik,* 43 NY2d 97, 100.)

The remaining claims of error are trivial.

The judgment of the Supreme Court, New York County (SCOTT, J.), rendered March 25, 1977, convicting defendant, on jury verdict, of murder in the second degree (Penal Law, § 125.25, subd 3), attempted robbery in the first degree (Penal Law, §§ 160.15, 110.00), and criminal possession of a weapon in the second degree (Penal Law, § 265.03), and sentencing him thereon, should be affirmed.

FEIN, J. (dissenting). The majority opinion fairly states the facts. However, I disagree with the conclusion reached by the majority that the Trial Justice's supplemental instructions were not overly coercive and otherwise prejudicial. Despite the absence of objection, I find the tenor of the instructions in response to questions posed by the jury to be so suggestive, coercive and prejudicial as to deprive defendant of his right to a fair trial. The conclusion of the majority and the trial court that this was a simple case was apparently not shared by the jury. Clearly, this jury was having trouble in its deliberations. Under such circumstances, I find error in the Trial Justice's belittling the case by reminding the jury that this was not "a difficult case" and by suggesting that, considering the fact that four counts were submitted, it seemed to the court that "somebody is not considering the facts". Nor was it at all proper for the Trial Justice to align himself with the prosecution by suggesting that "We" had presented proof, referring to the two accomplices who appeared on behalf of the People.

After having been sequestered for the night, the jury at 11 A.M. the following morning reported through the foreman that they reached an impasse on all four counts. The court then instructed them as follows:

"THE COURT: You may be seated. As I indicated before when I charged you, no one is to go in there with a closed mind. You should exchange ideas and views and there is no one who

knows at all what we did. *We presented you the evidence,* I gave you the rules of law and you said that you would not come in with any preconceived notions. *This is not a difficult case. We presented two witnesses who said they were there, they were accomplices. They told their story. You can either believe them or not. If you believe them, if you believe their story that the defendant was there and then you have to find independent evidence which tends to connect him with the incidents. All that the People have to prove is that there was a dead body and that the defendant participated in this alleged occurrence. It has been conceded that there was a dead body. The defendant says he was there, he knew the parties, but did not participate. I don't care how you decide, but on four counts it just seems to me that somebody is not considering the facts* or if they need any further explanation I will give it to them at any time or have testimony read to you. *Your term ends at the end of the day and the Court of Appeals has said that seven hours is not a reasonable time for deliberations in a case, in any kind of criminal case and therefore I cannot discharge you.* I'm not, as I indicated before, I'm not saying that a person who really feels and has a conscious conviction one way should surrender his or her conviction. As I said before I wanted to include the ladies in this also. I'm not talking to the men only, but all we are asking is that you use the same common sense that you use in your living room. *I'm certain if you were alone at home it wouldn't be a problem, you would decide it in 5 minutes or in the barbershop as you usually hear the people talking about what happens.* You have a chance to assist us in the administration of our criminal justice system and we are asking you to, if you have closed minds, to open them and you can either acquit or convict. It makes no difference to me, but with certainly four counts there should be some acquiescence or agreement on some of the counts. If you need an explanation, I will give it to you. You are not going to be discharged this time. If you need further explanation of the law or any of the points involved you can get it from me. As I indicated, you should not have vengeance or sympathy enter into your deliberations. If you have any questions you may ask them. You might wonder why we have the paper. Discussions of questions are to be carried on in the jury room and not in the courtroom." (Emphasis supplied.)

This portion of the supplemental charge tended to pressure

the jury to resolve the issue in the same manner as a barber-shop dispute is resolved, rather than with the calm deliberation appropriate for jury deliberations. Moreover, it improperly suggested that the testimony of the two accomplices was entitled to greater credibility than that of the defendant "if you believe their story that the defendant was there". It was undisputed that defendant was there. The issue was whether he participated in the crimes resulting in the victim's death. The court's prejudicial suggestions as to the greater credibility of the accomplices' testimony were further made clear in response to a later question respecting credibility:

"Now with reference to the last answer, the last answer to the question, there was reference to believing some of the witnesses. You have witnesses, two witnesses who pled guilty. That is a matter of record. *There is no doubt that they were there, you know, that part you have to believe. You understand what I am saying about that?*" (Emphasis supplied.)

The implication is clear.

The tenor of the supplemental instructions evinces understandable frustration on the part of the trial court in reacting to a jury which was having some difficulty in its deliberations. However, it was improper for the trial court to have denigrated the jury's function, in effect instructing them that members of the panel were not considering the facts and in suggesting to them that there be "acquiescence or agreement" on at least some of the four counts which had been submitted. In the context of the difficulty which the jury was obviously having in resolving the issues, I find the court's instructions coercive and sufficiently prejudicial as to warrant reversal and remand for a new trial. (Cf. *People v Hill,* 44 AD2d 813; *People v Riley,* 20 AD2d 599; *People v Josey,* 19 AD2d 660.)

Nor may the errors be disregarded, as does the majority in concluding that the proof of guilt was overwhelming. In reaching that conclusion, the majority accepts without question the prosecution proof adduced through the two accomplices who had pleaded guilty and testified that defendant was in fact a participant in the crime. Obviously, the jury when it initially considered the case, gave some credence to defendant's account that he played no role in the commission of the crime. This is evidenced by the extent to which the deliberations proceeded, the jury apparently deadlocked until the Trial Justice inadvisably instructed them that "on four counts it just seems to me that somebody is not considering the facts"

and that "with certainly four counts there should be some acquiescence or agreement on some of the counts."

Although undoubtedly inadvertent, the court's use of the term "We" in referring to the proof presented by the prosecution tended to align the court with the prosecutor, as an advocate, rather than an impartial arbiter. It may have conveyed to the jury the impression that the court had preconceived ideas as to the merits of the case, thereby denying defendant his right to a fair and impartial trial.

*People v Pagan* (45 NY2d 725) is not dispositive as the majority suggests. So far as appears, the Court of Appeals concerned itself with a supplemental charge far different from that in this case. Unlike *Pagan,* the charge here did not merely call upon the jury to renew deliberations and "make every effort possible to arrive at a verdict." Nor did the Trial Justice merely remind the jurors of their oaths and to make one final effort to review the evidence and to reach a verdict one way or the other. Rather, the court improperly suggested that the reason the jury could not reach an agreement or acquiescence on some of the four counts was that they were not considering the facts. As the Court of Appeals observed in *Pagan (supra,* pp 726-727): "To be sure a Trial Judge 'must not attempt to coerce or compel the jury to agree upon a particular verdict, or any verdict' *(People v Faber,* 199 NY 256, 259). Supplemental charges which prod jurors through prejudicial innuendoes or coerce them with untoward pressure to reach an agreement will not be countenanced (e.g., *People v Carter,* 40 NY2d 933, 934; *People v Sheldon,* 156 NY 268, 282)."

The court there relied upon established law precluding a Trial Justice from coercing or compelling a jury to reach agreement upon a particular verdict, or any verdict. I see no reason in this case to depart from clear principles designed to ensure the neutrality of the Trial Justice as an impartial arbiter. The observations of Judge CHASE in *People v Faber* (199 NY 256, 259) are applicable with equal force here: "The verdict of a juror should be free and untrammeled. In arriving at a verdict the judge presiding at the court must not attempt to coerce or compel the jury to agree upon a particular verdict, or any verdict. It was held in substance in *People v. Sheldon* (156 N.Y. 268) that an attempt to drive the members of a jury into an agreement is beyond the power of the court, and that an obvious effort to effect such result demands a new trial".

Accordingly, the judgment, Supreme Court, New York County (SCOTT, J.), rendered March 25, 1977, convicting defendant upon a jury verdict of murder in the second degree, attempted robbery in the first degree and criminal possession of a weapon in the second degree, should be reversed and the case remanded for a new trial.

KUPFERMAN and LUPIANO, JJ., concur with SILVERMAN, J.; MURPHY, P. J., and FEIN, J., dissent in an opinion by FEIN, J.

Judgment, Supreme Court, New York County, rendered on March 25, 1977, affirmed.