THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v GERHARDT ETHERIDGE, Appellant.—Appeal by defendant from a judgment of the Supreme Court, Kings County, rendered June 28, 1977, convicting him of manslaughter in the first degree and assault in the first degree, upon a jury verdict, and imposing sentence. Judgment reversed, on the law and as a matter of discretion in the interest of justice, and a new trial ordered. Under the circumstances of the instant case, in which the only substantial issue was whether the defendant had acted in self-defense (in response to an alleged assassination attempt) in firing upon the decedent and the complaining witness, we believe that the following three errors operated to deprive the defendant of a fair trial. First, it was impermissible for the prosecutor, in attempting to disprove the defense of justification (Penal Law, §§ 25.00, 35.00), to establish during his cross-examination of the defendant that the latter had never gone to the police and reported the alleged attempt on his life, as the foregoing would have required the defendant to incriminate himself on the charge of illegal possession of the murder weapon, for which he was also ultimately indicted (cf. *People v Rothschild*, 35 NY2d 355; *United States ex rel. Burt v State of New Jersey*, 475 F2d 234, cert den 414 US 938; *Doyle v Ohio*, 426 US 610). Second, it was error for the trial court to preclude the defendant (on the ground of hearsay) from explaining to the jury that his "flight" to Florida on the evening of the shooting was predicated on information coming to his attention that certain "friends" of the victims were "looking for [him]", and, later, to exacerbate that error by charging the jury that defendant's "flight" might be considered by it as some evidence of "consciousness of guilt". As the District Attorney has commendably conceded, such testimony would have been admissible as evidence of the defendant's state of mind in leaving the jurisdiction and would not have constituted hearsay (see Richardson, Evidence, [Prince, 10th ed], § 205). Finally, although not of controlling significance, it was improper for the prosecutor to cast aspersions on the defendant and his eyewitness during the course of his summation by branding them both as "liars" (see *People v Shanis*, 36 NY2d 697; *People v Rogers*, 59 AD2d 916). In view of the foregoing and in the absence of substantial physical evidence which is

strongly corroborative of either the version of the crime put forth by the prosecution and its eyewitnesses or the defendant and his eyewitness, it cannot be said that the errors set forth above, which relate solely to credibility, are insubstantial or may be regarded as harmless (cf. *People v Washington,* 68 AD2d 90; *People v Musolino,* 54 AD2d 22, cert den 430 US 935). We pass upon no further issue. Rabin, J. P., Gulotta and Shapiro, JJ., concur.

Mangano, J., concurs in the result, with the following memorandum: Though I agree that a new trial is required, I disagree with the majority insofar as they hold that it was impermissible for the prosecutor, in attempting to disprove the defense of justification, to establish during cross-examination of the defendant that the latter had never gone to the police and reported the alleged attempt on his life. The prosecutor asked defendant the following questions: "Q. When you saw her the police had already been to her apartment speaking to her. You knew the police were looking for you, didn't you? A. Yes, I did. Q. You never went to the police and said, 'I've been the victim of a crime'? A. No. Q. You never went to the police and told them two guys tried to kill you? A. No." (No objection was made.) I find no violation of defendant's constitutional right against self incrimination resulting from such prosecutorial questioning. The questions asked by the prosecutor were directed toward defendant's failure to report an alleged attempt upon his life at a time when he was not in police custody. The Fifth Amendment protection of the right to remain silent only applies "in any criminal case". Further "a criminal case" is said to begin when a suspect is taken into custody. Thus the prosecutor's question directed at defendant's precustodial silence does not constitute a violation of the Fifth Amendment right to remain silent. The entire thrust of *Miranda v Arizona* (384 US 436) was to uphold the right of one who is taken into custody to refrain from inculpating himself: the right to remain silent. More recently, *Doyle v Ohio* (426 US 610) held that the fact that a defendant is silent at the time of his arrest may not be used to impeach him at trial. A reading of that opinion points to its grounding on the holding in *Miranda.* One who has just been told of his right to remain silent may not be criticized for exercising that right. The scope of *Miranda* was modified by *Harris v New York* (401 US 222, 226) wherein it was stated, "The shield provided by *Miranda* cannot be perverted into a license to use perjury by way of a defense, free from the risk of confrontation with prior *inconsistent utterances.*" But the real question for Fifth Amendment purposes is whether the defendant herein was *compelled* to testify against himself. Self incrimination alone is not prohibited by the Fifth Amendment. Rather, it is *compelled* self incrimination which *Miranda* and its progeny have sought to avoid. As was stated in *Malloy v Hogan* (378 US 1, 8): "Governments, state and federal, are thus constitutionally compelled to establish guilt by evidence independently and freely secured, and may not by *coercion* prove a charge against an accused out of his own mouth" (emphasis added). In *United States ex rel. Burt v State of New Jersey* (475 F2d 234, cert den 414 US 938) the defendant, Burt, testified at trial that he had accidentally shot the decedent. It was uncontradicted, however, that Burt neither advised anyone about the shooting nor enlisted aid for the person he had shot. Later that same evening of the shooting Burt was arrested for unlawfully entering a store. It was not until *after* this arrest that the police connected Burt with the shooting. He was placed in jail and apparently at no time prior to trial did he tell the police or anyone else of the allegedly accidental nature of the shooting. Burt was never questioned about the shooting and it is not discernible whether he

had been given any *Miranda* warnings. When cross-examined at trial, Burt gave no explanation as to why he never told anyone of the alleged accident or why he never sought aid for the decedent. The prosecutor then referred to this in his summation. In a *Per Curiam* opinion, the Third Circuit held that silence may be commented upon for impeachment purposes when the silence is not rendered in the face of an accusation *(supra,* p 236): "All of the cases cited by defendant-appellee discuss the right to remain silent and the privilege against self-incrimination as protected by the Fifth Amendment through Miranda. The purpose of the rule is to see to it that the person accused of a crime cannot be forced to admit having committed it while under duress of any kind. In this instance, insofar as the shooting was concerned that problem did not exist. Had Burt commented on the shooting, it would not have been to refute an accusation. The police had arrested and detained Burt solely on the charge of breaking and entering. There was no reason for him not to comment on the allegedly accidental shooting. Therefore the basis for the necessity of Fifth Amendment protection did not exist in the then situation. It would have been totally unjustifiable to preclude the use of Burt's prior inconsistent conduct when showing the unreliability of defendant's testimony during cross-examination." Judge Rosenn's concurring opinion made the point even clearer *(supra,* p 239): "Delineation of the values underlying the right against self-incrimination emphasizes the crucial significance of use of the word 'compelled' in the fifth amendment: 'nor shall be compelled in any criminal case to be a witness against himself.' Proscribed by the fifth amendment is not self-incrimination *per se,* but, rather, *compelled* self-incrimination. Maintenance of an accusatorial system requires not that individuals never incriminate themselves, but merely that they not be compelled to do so. Protection of the human personality and prevention of government intrusion similarly require only that self-incrimination not be compelled. * * * At the point where Burt chose to remain silent, thus exercising a right against self-incrimination, it is doubtful that any compulsion existed. Burt was never interrogated about the Owens murder by the police. No official ever suggested to him that he should speak. Compulsion would have existed only if defendant realized that he might be asked at trial to explain his silence should his trial testimony prove inconsistent with silence while in incarceration. The coercive effect of such a realization, although perhaps real, is minimal. I do not find it substantial enough to raise the defendant's right against self-incrimination over society's interest in using the methods of the adversarial process to discover truth." Like Burt, the defendant herein was under no compulsion to incriminate himself while he remained at liberty for the six months following the shootings. Burt was in jail, though on a different charge, and was not considered to be under compulsion to testify about the accidental nature of the murder. In both cases, therefore, no Fifth Amendment violation was committed when the prosecution commented upon their silence in not coming forward voluntarily with information concerning the crimes. Such comment was fair cross-examination because both men took the stand and gave stories which, had they been true, should have been given to the authorities right away. An "accidental" shooting committed by a truly innocent man would be reported to the police. The same may be said about a shooting in self-defense. To remain silent in such circumstances is strong evidence that the later-asserted defense was fabricated. The silence is therefore fertile ground for cross-examination. Accordingly, I find no Fifth Amendment impediment in the type of cross-examination employed by the prosecutor.