■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v KEITH RICHARDS, Appellant.—Appeal by defendant from a judgment of the Supreme Court, Queens County, rendered April 25, 1978, convicting him of robbery in the first degree, upon a jury verdict, and imposing sentence. Judgment reversed, on the law as a matter of discretion in the interest of justice, and new trial ordered. Although the defendant's guilt was proven beyond a reasonable doubt, the evidence cannot be said to be overwhelming. Therefore, the instances of prosecutorial misconduct, compounded by inadequate curative instructions by the court, created substantial prejudice requiring a new trial. During her summation, the prosecutrix told the jury, without any suggestion of support in the record or any relevance to the charge before the jury, that the defendant returned to the victim's shop "and again he brazenly took her money." Expressly commenting on irrelevant uncharged crimes is one of the most egregious of trial errors *(People v Ashwal,* 39 NY2d 105; *People v Miles,* 48 AD2d 706). Here, moreover, the prejudice was exacerbated when the court, upon the immediate objection of

the defendant, merely instructed the jury that its recollection controlled, allowed the prosecutrix to continue in the same vein, and repeated the allegation itself while marshaling the evidence. These errors alone warrant reversal. Among the other errors, two more require comment. In pointing out the inconsistencies between the testimony of defense witnesses, the prosecutrix used the term "liar" to label one of the witnesses, an inflammatory tactic long condemned (see *People v Shanis,* 36 NY2d 697; *People v Etheridge,* 71 AD2d 861). She implied that the other defense witness, a former police officer, was not telling the truth because he offered to testify for the defendant without talking to the District Attorney or the arresting officer. This argument is improper but the impropriety is not apparent on its face. It can only be understood in the context of the officer's cross-examination, which was itself improper. The officer was called by the defendant for the sole purpose of laying a foundation for the introduction of his original investigation report. During cross-examination, the jury learned that the witness was the first investigating officer on the case in May, 1975. He took the victim's original description of the perpetrator and included it in his report. That description conflicted significantly with the defendant's characteristics. Fifteen months later, the officer heard that the defendant had been arrested for the crime. Based on his knowledge that the defendant worked across the street from the victim's store and "hung out" on the corner, the officer did not believe the defendant was the actual perpetrator. He asked the victim if she was sure of her identification of defendant and she responded affirmatively. He told the defendant that he would "give [him] a hand", and he spoke to the defendant's attorney following a chance meeting in court. The officer was thereafter suspended for a year on an unrelated matter and left the police force on January 13, 1978, before he was to be terminated. Prior to that, in December, 1977, he had responded to the District Attorney's request for information. He received the defendant's subpoena to testify the night before his appearance at trial. He had no prior knowledge that he would be called. In an effort to minimize the impact of the conflicting description contained in the investigation report, the prosecutrix sought to destroy the former officer's credibility. The thrust of her cross-examination was that he was unworthy of belief, namely because he failed to come forward with relevant information and because he failed to comply with police department regulations requiring notice to the Police Commissioner and District Attorney before testimony is given for the defense. This line of questioning was improper. It is elemental that the prosecutrix must have a good faith basis for her questions during cross-examination and subsequent comments during summation (see *People v Dawson,* 50 NY2d 311; *People v McDonald,* 49 AD2d 589). In this case the prosecutrix lacked good faith. The former officer did not fail to come forward with information. He filed all the information he had with his original report after investigating the crime. Upon learning of the defendant's arrest, he had no further information to report. He co-operated with the District Attorney's office, when requested. It was therefore improper to suggest that the officer deliberately withheld information from his superiors. This prejudicial suggestion was reinforced by the second prong of the impeachment tactics—the distortion of police regulations requiring notice prior to prodefense testimony. The prosecutrix had no basis to believe that the regulation was applicable to this witness, who was no longer in the police department's employ and who had no advance warning that his testimony was required. Moreover, she distorted this regulation to require notice when the officer first spoke to the defendant. This line of questioning was unfair. The former

officer had no reason to think an offer to testify need be reported. In summary, the errors in this case coupled with the lack of overwhelming. evidence of guilt, require a new trial. Hopkins, J. P., Damiani, Martuscello and Weinstein, JJ., concur.