■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v STANLEY MOORER, Appellant.—Appeal by defendant from a judgment of the Supreme Court, Queens County, rendered September 10, 1976, convicting him of attempted criminal possession of a weapon in the third degree, upon his guilty plea, and imposing sentence. This appeal brings up for review an order of the same court, dated April 1, 1976, which, after a hearing, denied defendant's motion to suppress evidence. Judgment and order affirmed. This case is remitted to the Supreme Court, Queens County, for further proceedings pursuant to CPL 460.50 (subd 5). Police Officer Nicholas Tarzia was the first witness at the suppression hearing conducted on February 9, 1976. He testified that on July 24, 1975 he and his partner received a radio call involving a man with a gun. They went to interview the complainant, Jesse Parham, who informed them that earlier in the evening he had been driving up a street until his path was blocked by another car. He complained that when he blew his horn, the occupant of the car which was blocking his came up to him and pointed a gun at him. Mr. Parham provided a description of the suspect and his car, giving its license plate number. In the immediate area where the incident occurred, Officer Tarzia spotted the described vehicle and, through the car's windshield, he saw an unemployment insurance card listing appellant's name and address. A young male informed Officer Tarzia that appellant lived directly across the street and, upon approaching the house, he was met at the door by a woman, approximately 60 years of age. Officer Tarzia identified himself and stated that he was looking for appellant so that he could talk to him. The woman identified herself as appellant's mother and told the officer that her son had just arrived home and was sleeping downstairs. She invited the officer in and then led him through a door to the basement. When he arrived in the basement he observed a .32 caliber revolver (which proved to be loaded) on top of a dresser within three feet of the bed or couch upon which appellant was sleeping. Appellant was thereupon awakened and arrested. Jesse Parham, his wife Lynette, and Police Officer Conlin (Officer Tarzia's partner) all testified and corroborated various parts of Officer Tarzia's testimony. Vertell

Sharpe, appellant's mother, was the only other witness. It was her testimony that although her son had previously been living upstairs, some three months prior to this incident he had moved into the basement and that he paid her rent for the use thereof. She further testified that the police had searched her son's car and had not merely looked through the windshield, and that they had also pushed their way into her house. She said that they then proceeded to the basement without her consent and that they there found the gun in a closed jewelry box. Only after their search, she testified, did they awaken her son. A sharp question of fact was thus presented and an issue of credibility was squarely placed before the hearing court. The question was answered and the issue was resolved by Criminal Term in favor of the People. Such a finding was amply supported by the record and we affirm. At the outset we note that no search took place because the evidence seized was in plain view at the time entry was made into the basement. A search warrant was therefore unnecessary (see *Coolidge v New Hampshire,* 403 US 443, reh den 404 US 874; *People v Spinelli,* 35 NY2d 77). The officers merely went to investigate the complainant Parham's allegation and to talk to appellant, and did not go to the house to search for the gun. The gun therefore came into view through inadvertence. The officers were also properly in the house because, after speaking to Mr. Parham, finding the car which fit the description and reading the address on the unemployment insurance card, they were obligated in the proper discharge of their duties to inquire into the matter further. Contraband coming into the plain view of an officer who has the right to be in the position to have that view is subject to seizure (see, e.g., *People v Bostic,* 34 AD2d 597). Here the gun was seized by the officers in the proper discharge of their routine investigatory functions as members of the police department. Assuming, *arguendo,* that this matter rises to the level of a search, the warrantless search was proper because consent to the search had been properly granted. Appellant lived in the basement of his mother's home and he therefore voluntarily subjected himself to the danger that she might consent to the search of his room. Her interest in the premises clearly authorized her to grant that consent. The only testimony which at all negated that authority was the bare statement by appellant's mother that he paid her rent. There was no other proof whatsoever to reject the compelling and logical inference that when a mother has a son living in her house she maintains a proprietary interest in that room at least equivalent to that of her son. The facts that would be needed to establish a landlord-tenant relationship between a son and his mother are peculiarly within the knowledge of those two. In this instance the bare statement by a mother, whose testimony was otherwise found to be incredible, that her son paid her rent does not in any adequate way establish her son's exclusive control of, and right to privacy in, that basement room (see *People v Wood,* 37 AD2d 920, affd 31 NY2d 975; *People v Potter,* 35 AD2d 1044). Martuscello, J. P., Cohalan, Rabin, Mollen and O'Connor, JJ., concur.