■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v SAMUEL PIZZICHILLO, Appellant.—Appeals by the defendant from (1) a judgment of the Supreme Court, Queens County

(Dunkin, J.), rendered December 19, 1984, convicting him of attempted sodomy in the first degree, criminal impersonation in the first degree and unlawful imprisonment in the first degree under indictment No. 1283/84, upon a jury verdict, and imposing sentence, and (2) a judgment of the same court, rendered April 15, 1985, convicting him of sodomy in the first degree under indictment No. 1278/84, upon his plea of guilty, and imposing sentence. The appeals bring up for review the denial (Pitaro, J.), after a consolidated hearing, of those branches of the defendant's omnibus motions which were to suppress certain physical evidence seized by law enforcement officials.

Ordered that the judgments are affirmed.

The pertinent facts relating to the defendant's appellate contentions have been fully set forth by the Presiding Justice in his dissent.

We find no merit to the defendant's claim that suppression of the challenged items found in his vehicle was warranted because the seizure of his vehicle from the driveway of his home was improper. The suppression hearing evidence established that the vehicle was voluntarily turned over to the police by members of the defendant's family, who possessed the requisite degree of authority and control over the premises where the vehicle was located (see, People v Cosme, 48 NY2d 286; People v Wood, 31 NY2d 975). As noted by the hearing court, the seizure of the automobile, which was the situs of the crimes, was with the full cooperation of the defendant's family. Indeed, on the day after the arrest, when the police officer arrived to secure the vehicle, the family members had already replaced a flat tire and had driven the car into the driveway, leaving the keys in the ignition for the officer.

This case is factually distinguishable from People v Miller (40 Ill 2d 154, 238 NE2d 407, cert denied 393 US 961), wherein at the time of the defendant's arrest at a private home where he was employed to care for a bedridden invalid, a police officer secured the consent from the home owner to search the defendant's vehicle in the garage.

Even assuming, arguendo, that the seizure of the defendant's vehicle was illegal, we find that the suppression of the items found in the vehicle was not warranted since their seizure was pursuant to a valid search warrant (see, People v Plevy, 52 NY2d 58; People v Seidita, 49 NY2d 755; United States v Kinney, 638 F2d 941, cert denied 452 US 918; United

*States v Agapito,* 620 F2d 324, 338, *cert denied* 449 US 834; *United States v Korman,* 614 F2d 541, 547, *cert denied* 446 US 952). The information submitted in the search warrant application, excluding the statement that the officer had viewed the handcuffs in the impounded vehicle, was "itself sufficient to establish probable cause"*(People v Plevy, supra,* at 66; *see, People v Seidita, supra,* at 756; *see also, People v Arnau,* 58 NY2d 27, 33, n 1 ["The validity of a warrant and search depends on whether the untainted information, considered by itself, establishes probable cause for the warrant to issue"]). Specifically, the complainants' statements concerning the vehicle and the presence of the knife and handcuffs therein set forth in the officer's affidavit in support of the warrant application were derived from sources independent of and discovered prior to any allegedly illegal conduct of the police, and established probable cause to search the vehicle. Similar to the situation in *People v Burr* (70 NY2d 354, 363, *cert denied* — US —, 108 S Ct 1294), the defendant herein made no claim at the suppression hearing that the police officer's mere opening of the door of the vehicle after it was impounded "was improperly undertaken by the police" with *the intent* to "confirm the information" already known to the police. Further, there is no evidence in the record that would support a finding of an improper confirmatory search by the police.

Accordingly, we find no reason to disturb the hearing court's conclusion that the items seized from the defendant's vehicle were not subject to suppression.

In addition, we find that neither the prosecutor's summation nor his cross-examination of the defendant's character witnesses warrants reversal of the judgment rendered December 19, 1984. The defendant did not object at trial to the statements made by the prosecutor during his summation concerning the testimony of the defendant's character witnesses, which he now claims were prejudicial. As to the prosecutor's questioning of the defendant's character witnesses, almost all of the questions now challenged by the defendant were not objected to by him at the trial. Further, when objections were made at the trial, the record indicates that either the objections were sustained and in at least one instance, a curative instruction was given, or the objection was properly overruled, or the answer to the question was not prejudicial. Thompson, Lawrence and Weinstein, JJ., concur.

Mollen, P. J., dissents and votes to reverse the judgments of conviction, vacate the defendant's guilty plea and grant those branches of the defendant's omnibus motions which were to

suppress physical evidence and remit the matters to the Supreme Court, Queens County, for further proceedings.

The instant appeal arises out of the defendant's convictions of sodomy and other or related offenses in connection with two separate incidents which occurred in January and March of 1984. The cases were consolidated for purposes of the suppression hearing only. The defendant was ultimately convicted, after a jury trial under indictment No. 1283/84, *inter alia,* of attempted sodomy in the first degree in connection with the March 1984 attack. Thereafter, the defendant pleaded guilty under indictment No. 1278/84 to sodomy in the first degree with respect to the January 1984 incident. On appeal, the defendant focuses primarily on the propriety of the suppression court's ruling regarding the validity of the search and seizure of his automobile. For the reasons which follow, I conclude that the seizure and subsequent search of the defendant's car were improper and, thus, the suppression court erred in denying the defendant's motion to suppress the physical evidence seized as a result of that search.

At the suppression hearing, the complainant involved in the March 10, 1984 incident testified that on the afternoon in question, she was walking to a store in the vicinity of her Ozone Park residence when the defendant pulled up next to her in a black Buick and asked her for directions to Rockaway and Lefferts Boulevards. The defendant identified himself as a police officer and displayed a badge. He stated that he was in a hurry and asked the complainant to get into the car and direct him. The complainant agreed. When she entered the car, however, the defendant locked the car and attempted to sexually assault the complainant at knifepoint. After a brief struggle, the complainant managed to escape from the car. When she exited the car, she was able to observe the vehicle's license plate number. The complainant then immediately went to her aunt's house and contacted the police.

Following his interview of the complainant, Detective McKinley ascertained that the defendant was the registered owner of the vehicle in question. It was also determined that the defendant was not a police officer; in fact, it was ultimately determined that the defendant was a corrections officer. The day following the incident, Detective McKinley went to the defendant's residence in Ozone Park and asked the defendant's parents if he could speak with the defendant. When the defendant appeared, the detective indicated that he wanted to speak with the defendant at the precinct. The defendant agreed and, as they were walking towards the

police vehicle, Detective McKinley asked the defendant if he was the owner of the vehicle in question. The defendant responded affirmatively and also stated that no one else ever used the vehicle. The detective testified that at that point in time, he considered the defendant to be in custody, although he was not formally arrested nor was he given *Miranda* warnings. Prior to leaving the defendant's residence, Detective McKinley took the defendant's car keys, handed them to the defendant's parents and stated that a police officer would be by later in the day to pick up the car. No request was made of the defendant to consent to the seizure of his vehicle.

Once he arrived at the precinct, the defendant was given an opportunity to contact his union representative and an attorney after he was informed of the charges against him. The defendant was also administered his *Miranda* warnings. Thereafter, the defendant was placed in a lineup and identified by the complainant. The defendant was also identified separately by the victim of the sexual attack which occurred in January 1984 which allegedly also occurred in the defendant's vehicle.

That same day, Detective Diegman, at the request of Detective McKinley, went to the defendant's residence to pick up the defendant's car. When he arrived, the defendant's mother stated that a flat tire on the defendant's car was being repaired. After the tire was repaired, Detective Diegman drove the car to the precinct and turned the keys over to Detective McKinley. Sometime thereafter, Detective McKinley went to the car to fill out the necessary voucher forms. When he opened the driver's door of the vehicle, he observed a set of handcuffs dangling from the hood release inside the car. The victim of the January 1984 attack had told the police that she had observed a set of handcuffs in her assailant's vehicle. The detective immediately closed the car door upon observing the handcuffs and vouchered the car.

The next morning, Detective McKinley applied for a search warrant for the defendant's car. In his affidavit in support of the warrant application, the detective relayed the account of the victim of the March 10, 1984 assault. The detective also indicated that the victim of the January 1984 assault had observed a set of handcuffs in her assailant's vehicle. The detective further explained that the defendant's car had been impounded and that handcuffs had been observed inside the car. A search warrant was issued and a subsequent search of the vehicle uncovered the set of handcuffs and a knife in the glove compartment.

The defendant moved to suppress the handcuffs and knife seized as a result of the search of his automobile on the ground that the vehicle should not have been seized by the police until after a search warrant was issued. The defendant further argued that since the search warrant had been obtained after this initial illegal seizure of the vehicle it could not be relied upon to justify the subsequent search of the car. The hearing court refused to suppress this evidence, finding that the vehicle had been voluntarily turned over to the police by the defendant's family members and, thus, a search warrant was unnecessary. I respectfully disagree with the hearing court's determination and the opinion of my colleagues and, thus, vote to reverse the judgments of conviction, vacate the defendant's guilty plea, and remit the matter to the Supreme Court, Queens County, for further proceedings on the indictments.

It is well established that "the police may lawfully conduct a warrantless search when they have obtained the voluntary consent of a party who possesses the requisite degree of authority and control over the premises or personal property in question * * *. [W]here two or more individuals share a common right of access to or control of the property to be searched, any one of them has the authority to consent to a warrantless search in the absence of others" *(People v Cosme,* 48 NY2d 286, 290; *United States v Matlock,* 415 US 164; *People v Wood,* 31 NY2d 975). Thus, the courts have upheld warrantless searches of a defendant's residence based upon the consent by the defendant's spouse *(see, United States v Matlock, supra; People v Sawyer,* 135 AD2d 1083) or roommate *(see, People v Cosme, supra; People v Moore,* 135 AD2d 839, *lv denied* 71 NY2d 900; *People v Gilman,* 135 AD2d 951, *lv denied* 71 NY2d 896). Moreover, warrantless searches of the defendant's room located in the home of defendant's parents based upon the consent of the defendant's parents have also been upheld as valid searches *(see, People v Wood, supra; People v Moorer,* 58 AD2d 878). It is significant to note that a warrantless search based upon third-party consent is valid because the consenting party's relationship to the subject property permits that party to consent, and not because that party's relationship to the defendant permits the party to waive the defendant's rights *(see, People v Mortimer,* 46 AD2d 275, 276). As the Supreme Court in *United States v Matlock* (415 US 164, 171, n 7, *supra)* noted: "The authority which justifies the third party consent * * * rests * * * on mutual use of the property by persons generally having joint access or

control for most purposes, so that it is reasonable to recognize that any of the co-inhabitants has the right to permit the inspection in his own right and that the others have assumed the risk that one of their number might permit the common area to be searched".

In the case at bar, the hearing record is devoid of any evidence to establish that the defendant's parents possessed the necessary authority and control over the defendant's vehicle so as to justify the warrantless search and seizure of the vehicle under the third-party consent exception to warrant requirement. The testimony adduced at the suppression hearing established that the defendant was the sole registered owner of the subject vehicle and that no one else used it. No evidence was adduced to demonstrate that the defendant's parents had access to the car (i.e., possessed a key) or were permitted to use it. Based on the record before this court, it is clear, in my opinion, that the defendant maintained his reasonable expectation of privacy in his car and, thus, the search and seizure thereof based upon his parents' consent was constitutionally impermissible (see, People v Miller, 40 Ill 2d 154, 238 NE2d 407, cert denied 393 US 961 [consent by owner of house to a search of an automobile parked in his garage but owned by defendant was constitutionally invalid]). Moreover, it should be noted that there is absolutely no basis in the record upon which to conclude that the defendant consented to the seizure of his vehicle since his permission to take the car was never sought by the police. Additionally, the record herein fails to establish that the defendant was made aware of Detective McKinley's intention to seize the vehicle when the detective turned the keys over to the defendant's parents.

I further disagree with the majority's conclusion that even assuming that the seizure of the defendant's car was invalid, suppression of the fruits of the search of the car, to wit, the handcuffs and knife, was unnecessary, as the search was conducted pursuant to a valid search warrant. The majority, relying on the case of People v Arnau (58 NY2d 27), takes the position that the search warrant for the defendant's car was based on information obtained from sources prior to and independent of the alleged improper seizure of the defendant's vehicle. The case at bar is clearly distinguishable from People v Arnau (supra) in that the search warrant application herein was based, at least in part, on information obtained from the illegal seizure and search of the defendant's vehicle.

The case of People v Arnau (supra) involved a situation in which an undercover police officer purchased cocaine from the

defendant in his apartment. After the officer exited the apartment, the officer informed the surveillance team that he observed large quantities of cocaine in the defendant's apartment. In an effort to secure the premises, the surveillance team entered the defendant's apartment and arrested the defendant. While the defendant was being handcuffed, the officers checked the apartment for additional occupants. No search for evidence was conducted nor was any evidence discovered or seized. Later that day, the police applied for a search warrant for the defendant's apartment. The search warrant application only reflected information obtained from the undercover officer. The application did *not* contain any mention of the officers' observations made in the apartment during the defendant's arrest. A search warrant was eventually issued and a search of the defendant's apartment uncovered large quantities of cocaine and marihuana.

In *People v Arnau (supra,* at 33, n 2), the Court of Appeals, in the first instance, assumed without deciding that the initial entry by the police into the defendant's apartment was illegal. The court went on to hold that since the search warrant in that case was based *solely* on information obtained prior to and independent of the illegal entry, suppression of the evidence seized was unnecessary. The court stated, *inter alia,* "[s]ince there is not the slightest hint that the search warrant was in any way tainted by the illegal entry or that the police exploited the entry in an effort to obtain evidence, we hold that the evidence seized is not the fruit of the poisonous tree and that the exclusionary rule is, therefore, inapplicable in this case" *(People v Arnau, supra,* at 33; *see also, People v Burr,* 70 NY2d 354, *cert denied* — US —, 108 S Ct 1294).

In the case at bar, a review of the search warrant application reveals that, unlike *People v Arnau (supra),* it contains information obtained by the police as a result of the observations made by Detective McKinley when he vouchered the car. The detective specifically noted that he observed handcuffs inside the defendant's car and that the victim of the January 1984 attack had noticed handcuffs inside her assailant's vehicle. Since the search warrant was not based solely on information obtained prior to and independent of the illegal seizure of the defendant's vehicle, the independent source rule is inapplicable to the case at bar.

Moreover, the error in denying the defendant's motion to suppress did not constitute harmless error since the proof of the defendant's guilt was far from overwhelming *(see, People v Crimmins,* 36 NY2d 230). At trial, the defendant took the

stand and testified that on the day in question he observed the complainant waving to him as he drove down Linden Boulevard. The defendant stopped and, at the complainant's request, gave her a ride to Lefferts Boulevard. The complainant asked the defendant about his occupation and the defendant displayed his badge and identified himself as a corrections officer. The defendant testified that at some point during the ride, the complainant made a sexual advance towards the defendant which he rebuffed. The complainant eventually exited the car at Lefferts Boulevard. During his testimony the defendant acknowledged ownership of the handcuffs which he used in his capacity as a corrections officer. The defendant also explained that he used the knife in the glove compartment of his car when he cleaned the chrome on his vehicle.

Clearly, the prosecution's case against the defendant rested solely on the complainant's testimony, whose version of the incident was controverted by the defendant. In view thereof, it cannot be said that "there is no reasonable possibility that the [hearing court's] error [in denying the defendant's suppression motion] might have contributed to defendant's conviction" *(People v Crimmins, supra, at 237)*.

Additionally, the prejudicial effect of this evidence was exacerbated by the prosecutor's improper questioning of several of the defendant's character witnesses. The most egregious error was the prosecutor's inquiry as to whether one of the defendant's character witnesses was aware that the defendant had sodomized the victim of the January 1984 attack *(see, People v Kennedy,* 47 NY2d 196, 206, *rearg dismissed* 48 NY2d 635; *People v Dillard,* 96 AD2d 112)*. The prosecutor's inquiry as to whether a defense character witness would change his opinion of the defendant if he knew the defendant committed a crime was also highly improper *(see, People v Pryor,* 70 AD2d 805). Although the failure of defense counsel to object to this questioning failed to preserve the challenge to the propriety of the prosecutor's remarks for appellate review *(see,* CPL 470.05 [2]; *see also, People v Cuevas,* 99 AD2d 553), in my opinion, the obvious prejudicial effect of these remarks on the jurors' resolution of the close credibility issue presented in this case, coupled with the erroneous suppression ruling, mandates reversal of the defendant's judgment of conviction under indictment No. 1283/84 and the ordering of a new trial.

Finally, given the fact that the defendant's guilty plea under indictment No. 1278/84 was conditioned upon a promise of a sentence of a term of imprisonment concurrent to the terms of imprisonment imposed under indictment No. 1283/84

*(see, People v Fuggazzatto,* 62 NY2d 862) and was premised on the assumption that the fruits of the illegal seizure and search of the defendant's car would be admissible at trial, the plea in that case should be vacated and the matter remitted to the Supreme Court, Queens County, for further proceedings on that indictment.