■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v MATTHEW KANE, Appellant.—Appeal by the defendant from a judgment of the Supreme Court, Queens County (Dufficy, J.), rendered September 20, 1989, convicting him of attempted criminal possession of a weapon in the third degree, upon his plea of guilty, and imposing sentence. The appeal brings up for review the denial, after a hearing, of those branches of the defendant's omnibus motion which were to suppress physical evidence and statements made by him to the police.

Ordered that the judgment is affirmed.

The landlord of the defendant's apartment building reported to the police that she had found a box containing explosives in the garage. The area was evacuated, and the defendant's roommate questioned. The roommate told the police that two weeks earlier, he had seen dynamite in the defendant's bedroom closet. Although he asked the defendant to remove the

dynamite, he was unsure whether the defendant complied. In addition, he indicated that the defendant told him that he had once blown up a tugboat. The roommate also informed the police that the defendant had weapons, ammunition and newspaper clippings regarding bombing incidents in the apartment. When the box found in the garage was described to the roommate, he stated that it was the same type of box he had seen in the defendant's closet. In the meantime, the bomb squad had examined the box and its contents and determined that the simultaneous presence of the blasting caps, the dynamite, and an accelerant made the situation very unstable and dangerous to the community.

After the roommate consented to a search of the apartment, the bomb squad conducted a cursory, olfactory search for more dynamite sometime between 9:00 P.M. and 10:00 P.M. Although the weapons and newspaper clippings were observed by the police, no explosives were discovered and nothing was seized. Following the search, the apartment was secured and a warrant was obtained. Thereafter, at about 3:00 A.M., the police conducted a second, more thorough search of the apartment and discovered more explosives in the defendant's bedroom. The explosives, weapons and newspaper clippings were then seized.

It is fundamental that where "a police officer reasonably perceives that an emergency situation exists, he may enter and conduct a warrantless search of the premises" *(People v De Vito,* 114 AD2d 374, 375), the scope and duration of which is "limited by and reasonably related to the exigencies of the situation" *(People v Cohen,* 87 AD2d 77, 82-83, *affd* 58 NY2d 844, *cert denied* 461 US 930; *People v Taper,* 105 AD2d 813, 814). Applying the three basic elements necessary to invoke the emergency doctrine as set forth in *People v Mitchell* (39 NY2d 173, 177-178, *cert denied* 426 US 953) to the facts of this case, it is readily apparent that the first search of the apartment, without a warrant, was completely justified as an emergency *(see also, People v Doerbecker,* 39 NY2d 448). Thus, we need not reach the issue of whether the defendant's roommate could properly consent to a search of the defendant's room.

Moreover, the question of whether the emergency continued to exist so as to justify the second search made several hours later is irrelevant in light of the fact that the second search was made pursuant to a valid search warrant. Contrary to the defendant's contentions, the application for, and the issuance of, the search warrant was proper. As a general rule, an

appellate court will give deference to a judicial determination of probable cause *(see, People v Fromen,* 125 AD2d 987, 989), and "as long as the evidence creates substantial probability that the seizable property will be on the premises when searched, the warrant should be sustained" *(People v Glen,* 30 NY2d 252, 259).

In this case, keeping in mind that a search warrant application should not be read in a hypertechnical manner and should be "considered in the clear light of everyday experience and accorded all reasonable inferences" *(People v Hanlon,* 36 NY2d 549, 559; *see also, People v Williams,* 119 AD2d 606, 607), it is clear that the issuing Justice herein did not act merely as a rubber stamp *(see, People v P. J. Video,* 68 NY2d 296, 307, *cert denied* 479 US 1091; *People v Potwora,* 48 NY2d 91, 94-95). The record does not support the defendant's claim that the statements in the warrant application were either knowingly false or made in reckless disregard of the truth *(People v Tambe,* 71 NY2d 492; *People v Pizzichillo,* 144 AD2d 589; *People v Quinones,* 139 AD2d 774), or that there was a "deliberate exclusion of material information tending to negate probable cause" *(People v Windrum,* 128 Misc 2d 1043, 1046). Nor does the record support the defendant's claim that the application was based upon stale information *(see, People v Clarke,* 173 AD2d 550; *People v Wilkerson,* 167 AD2d 662; *People v Freitag,* 148 AD2d 544; *People v Teribury,* 91 AD2d 815). Since the information provided to the police by the defendant's roommate was based upon the roommate's personal knowledge and was corroborated by the first, emergency search of the apartment, the two prongs of the *Aguilar-Spinelli* test *(see, Spinelli v United States,* 393 US 410; *Aguilar v Texas,* 378 US 108; *see also, People v Griminger,* 71 NY2d 635) were met *(see, People v Hicks,* 38 NY2d 90; *People v Bolanos,* 161 AD2d 528; *People v Benjamin,* 150 AD2d 952; *People v Wollenberg,* 123 AD2d 413). In addition, there was nothing improper with the nighttime execution of the warrant *(see,* CPL 690.35 [3] [a]; *People v Wollenberg, supra).*

Finally, we find that the court properly denied that branch of the defendant's omnibus motion which was to suppress his statement. After being read his *Miranda* rights, the defendant remarked that he could not talk or he'd be a "dead man". Because this comment was made spontaneously and was not the result of police interrogation, it is admissible *(see, People v Lynes,* 49 NY2d 286, 294; *People v Paul,* 116 AD2d 746, 747). Thompson, J. P., Kunzeman, Sullivan and Balletta, JJ., concur.