OPINION OF THE COURT
Jasen, J.
The issue raised on this appeal is whether evidence seized pursuant to a valid search warrant obtained after the police illegally entered defendant’s apartment should be suppressed even though the search warrant was obtained on the basis of information gathered from lawful sources prior to and independent of the illegal entry.
On June 21, 1977, at 3:55 p.m., an undercover police officer purchased a quantity of cocaine from the defendant at his apartment at 398 Cornelia Street in Brooklyn. After observing the undercover officer leaving defendant’s apartment, Officer Randazzo, the remainder of the narcotics squad surveillance team and the undercover officer met at *30 a prearranged location. When the undercover officer informed the team that he had observed a large quantity of narcotics in defendant’s apartment, a decision was made to enter and secure the apartment immediately.
At 4:30 p.m., Officer Randazzo and other officers entered the building at 398 Cornelia Street, a two-family, three-floor structure occupied solely by defendant and his family, and found defendant in the first floor foyer making house repairs. Defendant was arrested, handcuffed and led to his apartment on the top floor. The officers entered the apartment through an open door and handcuffed defendant to a radiator while the officers checked the apartment for other occupants and additional entrances and exits. No search for evidence was conducted at that time and no evidence was discovered or seized.
Officer Randazzo then called for assistance and at 5:10 p.m. four additional officers arrived to secure the apartment. Thereupon, Officers Randazzo and Scagnelli left the apartment to meet with the undercover officer. At 6:20 p.m., they proceeded to the District Attorney’s office for the purpose of preparing an application for a search warrant. The paper work having been completed at approximately 7:45 p.m., the team, in the company of the Assistant District Attorney, left for the courthouse. The search warrant affidavit, prepared by the team and sworn to by Officer Randazzo, which reflected only information obtained from the undercover officer with respect to the type, quantity and location of the contraband which he observed in defendant’s apartment, was presented to the Presiding Judge. Nothing observed by the officers upon their initial entry into defendant’s apartment was mentioned in the affidavit. Based upon the information contained in the affidavit, the Presiding Judge signed the search warrant at approximately 8:30 p.m.
At approximately 9:00 p.m., the officers bearing the search warrant returned to the premises. After displaying the warrant to the defendant, the apartment was searched. The search uncovered a plastic bag containing cocaine lodged in an ice cream container in the refrigerator; a large quantity of marihuana and a three-beam scale was found *31 in a closet. More cocaine was discovered in a black leather bag inside a metal box in defendant’s bedroom.
After the search was completed at 11:10 p.m., the defendant was taken to the police station and charged with criminal sale of a controlled substance in the second degree, criminal possession of a controlled substance in the first, third, fifth and sixth degrees, and criminally using drug paraphernalia in the third degree.
A pretrial suppression hearing was conducted, after which defendant’s motion to suppress physical evidence discovered during the search of his apartment was denied. On appeal, the Appellate Division reversed, granted the motion to suppress, and remitted for further proceedings.
The People now appeal from the Appellate Division order contending that the initial entry into defendant’s apartment was lawful because it was necessary to prevent the drugs from being sold or destroyed, and that the subsequent seizure of the challenged evidence was likewise lawful. It is further contended that, regardless of whether or not exigent circumstances existed, the evidence should not be suppressed since it was obtained pursuant to a valid search warrant based solely on information obtáined prior to and independent of the initial entry.
Defendant contends that there was no exigency which justified the initial warrantless entry and, additionally, that the evidence seized should be suppressed as the fruit of the initial illegal entry.
We note at the outset that we are not confronted with a situation where the police have illegally entered a home, discovered contraband, and then sought a search warrant in an attempt to validate the seizure of the fruits of the illegal entry. (United States v Griffin, 502 F2d 959, cert den 419 US 1050.) Furthermore, this is not a situation where a search was conducted pursuant to an invalid warrant (People v Williams, 37 NY2d 206), nor does this case involve a warrantless search of a home which is sought to be justified as incident to a lawful arrest outside that home (Vale v Louisiana, 399 US 30). What we are confronted with here is a situation where the police, having firsthand information that a suspect was currently selling large *32 quantities of narcotics from his home, enter the suspect’s home solely for the purpose of securing the premises and preventing the destruction of evidence and then wait until a search warrant arrives before conducting a search of the premises which ultimately turns up large quantities of illegal narcotics and drug paraphernalia.
in determining whether or not evidence seized pursuant to a search warrant based entirely on information obtained prior to and independent of the initial warrantless entry should be suppressed, we are guided by the realization that the exclusionary rule is a judicially created tool designed to effectuate rights guaranteed by the Fourth Amendment. (Stone v Powell, 428 US 465, 483; United States v Calandra, 414 US 338, 348; People v McGrath, 46 NY2d 12, 21.) The rule provides that evidence which is obtained as a result of illegal police activity may not be used against a defendant at his criminal trial. It must be remembered, however, that the exclusionary rule, when applied, exacts a heavy price by encroaching upon the public interest in prosecuting persons accused of criminal activity and having their guilt or innocence determined on the basis of all the evidence which exposes the truth. (Alderman v United States, 394 US 165, 175; People v Rogers, 52 NY2d 527, 534-535.) Consequently, courts have long held that only evidence which “ ‘has been come at by exploitation of that illegality’” should be suppressed. (Wong Sun v United States, 371 US 471, 488, quoting Maguire, Evidence of Guilt [1959], p 221; 3 La Fave, Search & Seizure, § 11.4, p 613.) As a result of this recognition, the defendant challenging the admission of the evidence has the burden of .showing that the seizure of the evidence was causally related to the illegal police conduct. To use the timeworn phrase used by Justice Frankfurter, only evidence which is the “fruit of the poisonous tree” should be excluded. (Nardone v United States, 308 US 338, 341.)
To resolve this appeal, we consider the independent source rule as one of the exceptions carved from the exclusionary rule. This rule was first articulated in the Silverthorne Lbr. Co. case (251 US 385), wherein the Supreme Court indicated that when the police act illegally during the process of obtaining evidence, “this does not mean that *33 the facts thus obtained become sacred and inaccessible. If knowledge of them is gained from an independent source they may be proved like any others” (Silverthorne Lbr. Co. v United States, supra, at p 392 [emphasis supplied].)
Applying the independent source rule to the facts of this case, it would be inappropriate to order suppression of the evidence which was lawfully seized pursuant to a valid search warrant[1] based solely on information obtained prior to and independent of the illegal entry. An undercover police officer personally observed large quantities of drugs in defendant’s apartment at the time he purchased $325 worth of cocaine from the defendant. This information, as found by both courts below, was sufficient to constitute probable cause to arrest the defendant. After arresting the defendant, the police officers entered defendant’s apartment not for the purpose of searching for and seizing evidence, but merely to secure the premises to assure that the drugs would not be sold or otherwise disposed of.[2] No search for evidence was conducted at that time and no evidence was uncovered or seized. After the apartment was secured, a warrant was obtained based solely on information obtained by the undercover officer prior to and independent of the illegal entry. Only after the warrant arrived did the police search the apartment and uncover the drugs. It was during the course of that lawful search, authorized by a neutral Judge, that the challenged evidence was discovered and seized. Since there is not the slightest hint that the search warrant was in any way tainted by the illegal entry or that the police exploited the entry in an effort to obtain evidence, we hold that the evidence seized is not the fruit of the poisonous tree and that the exclusionary rule is, therefore, inapplicable to this case.
Unlike cases such as Wong Sun v United States (371 US 471, supra) which have applied the doctrine of attenuation *34 in attempting to mark the point at which the police misconduct becomes so far removed from the seizure of evidence that it cannot be said that the evidence was “come at by exploitation” of the misconduct, thus rendering the exclusionary rule inapplicable, this case requires no such analysis. Here, and wherever the independent source rule is applicable, there is no causal connection, direct or indirect, proximate or attenuated, between the illegality and the subsequent seizure. In cases where this causal nexus is lacking, the exclusionary rule simply does not apply. This is so because the penalty imposed upon the government and, in turn, upon the public by suppressing such lawfully seized evidence cannot be justified. “It is one thing to say that officers shall gain no advantage from violating the individual’s rights; it is quite another to declare that such a violation shall put him beyond the law’s reach even if his guilt can be proved by evidence that has been obtained lawfully.” (Sutton v United States, 267 F2d 271, 272.) So applied, the independent source rule is “unquestionably sound”. (3 La Fave, op. cit., § 11.4, p 617.)
United States v Allard (634 F2d 1182), cited by defendant in support of his position, warrants comment.[3] In that case, the court held that the act of securing an apartment constitutes a seizure of the apartment anpl everyone and everything therein. Thus, the court reasoned that a nexus was established between the entry and the subsequently seized evidence, and that the evidence should be suppressed.[4] We reject this analysis for a number of reasons.
We do not agree that the unlawful act of securing an apartment automatically constitutes a “seizure” of any *35 contraband in the apartment even though no contraband was discovered as a result of the illegal entry. We believe the better rule is that where the evidence sought to be suppressed is the product of an independent source entirely free and distinct from proscribed police activity, it should be admissible and not subject to a per se rule of exclusion based solely on the unlawful conduct. To hold otherwise unjustifiably extends the exclusionary rule to suppress all evidence present in a suspect’s home at the time the police illegally entered regardless of whether or not the seizure of that evidence was causally related to the illegal entry.
Such an analysis is entirely inconsistent with the analysis employed in similar cases by this and the United States Supreme Court. In United States v Crews (445 US 463), a case involving the illegal seizure of a robbery suspect and a challenge to three separate identifications of him by one of his victims, the court analyzed each element of the victim’s in-court identification separately to determine whether it was “‘come at by exploitation’ of the violation of the defendant’s Fourth Amendment rights.” (United States v Crews, supra, at p 471, quoting Wong Sun v United States, supra, at p 488.) the court did not analyze the illegal seizure of the defendant and the subsequent in-court identification as one incident requiring suppression of all evidence acquired after the illegal police action but, rather, chose to adhere to the well-established practice of analyzing each act separately to determine whether or not a causal nexus existed.
In Johnson v Louisiana (406 US 356), a case involving a warrantless arrest of defendant in his home and a subsequent lineup identification, the court once again viewed the warrantless entry of defendant’s house and his arrest therein as events analytically separate from the lineup identification. In affirming the denial of defendant’s motion to suppress, the court stated that “[t]he validity of [defendant’s] arrest, however, is beside the point here, for it is clear that no evidence that might properly be characterized as the fruit of an illegal entry and arrest was used against him at his trial.” (Johnson v Louisiana, supra, at p 365 [emphasis supplied].)
*36 Similarly, in People v Rogers (52 NY2d 527, supra), we analyzed the fact that defendant was illegally detained separately from the subsequent discovery of his bloody clothing. Recognizing that it would be inappropriate to analyze those separate incidents as one event automatically requiring suppression of the clothing as the fruit of the illegal detention, we held that the clothing should be admissible at defendant’s trial since it was discovered and seized as a result of subsequent lawful police activity and not as a result of any exploitation of the initial illegality. In response to defendant’s argument, we stated that “[i]t has never been enough to show that evidence must be suppressed simply because it was discovered subsequent to an illegal arrest”. (People v Rogers, supra, at p 535.)
Our decision in People v Knapp (52 NY2d 689) is also instructive. In that case, we stated unequivocally that the County Court erred in failing to differentiate among the various phases of the police officers’ entry into and search of defendant’s home. We held that the police entry into the home and the seizure of drugs in plain view in the kitchen was analytically one event separate from subsequent searches of the basement and bedrooms. This seizure was held to be reasonable and the evidence admissible at trial. With respect to the subsequent searches of the bedrooms and the basement, we analyzed each separately and held that they were unreasonable and ordered suppression of evidence seized pursuant thereto. It logically follows that if the mere entry into defendant’s home had constituted a seizure of all contraband contained therein, it would have been entirely unnecessary for us to analyze the bedroom and basement searches separately.
The weakness of defendant’s position is perhaps best demonstrated by the United States Supreme Court’s decision in Mincey v Arizona (437 US 385). In that case, the court held, inter alia, that a warrantless search of defendant’s apartment where a crime had occurred was violative of defendant’s Fourth Amendment rights. In so holding, however, the court noted with approval the use of a police officer to secure an apartment to protect the crime scene. *37 (Mincey v Arizona, supra, at p 394.) Thus, to say that the mere act of securing an apartment prior to conducting a search thereof is a seizure of the apartment and everything in it is totally at odds with the Supreme Court’s analysis and decision in Mincey.
There can be little doubt that the proper method of resolving Fourth Amendment issues, as demonstrated in the afore-mentioned cases, is to examine each phase of the police officers’ activities as analytically separate events and then decide whether the police acted illegally during any of those phases. If such illegal activity is found to have occurred, it must then be determined whether or not the evidence seized was come at by exploitation of the illegal police activity. Adhering to this method of analysis, and rejecting that used in United States v Allard (634 F2d 1182, supra), we hold that the search of defendant’s apartment pursuant to a valid search warrant based on information obtained prior to and independent of the illegal entry was reasonable and the evidence seized should not be suppressed.
Additionally, we note that to adopt a method of analysis whereby the mere act of securing an apartment constitutes a seizure of everything therein would effectively abrogate the independent source rule which is considered by the courts and scholars to be a sound doctrine. (See United States v Crews, 445 US 463, supra; 3 La Fave, Search & Seizure, § 11.4, p 617.) Furthermore, the logical extension of such reasoning would seem to abrogate the attenuation and inevitable discovery doctrines as well.
Finally, we believe that as a matter of policy it is inappropriate to suppress evidence lawfully seized simply because the police have blundered in a way wholly unrelated to the seizure of that evidence. Since the exclusion of evidence seized pursuant to a valid untainted search warrant was never contemplated by the exclusionary rule, suppression is neither desirable nor required.
Our decision today fully comports with analogous decisions of this court, other State and lower Federal courts,[5] as well as the United States Supreme Court. For example, in *38 cases where a search warrant was issued based in part on illegally obtained information, courts have held that evidence seized pursuant to such warrants need not be suppressed if there was additional information, sufficient by itself to constitute probable cause, derived from sources independent of the illegal activity upon which the decision to issue the warrant was based. (Franks v Delaware, 438 US 154; People v Plevy, 52 NY2d 58, supra; People v Seidita, 49 NY2d 755; United States v Korman, 614 F2d 541.)
Recently, we held that a defendant’s act of throwing a gun out of the police car in which he was riding after being illegally seized was an independent act, not the direct result of, and therefore not tainted by, the illegal seizure. (People v Boodle, 47 NY2d 398.) Since the police officers did not purposefully intend to obtain evidence as a result of the illegal seizure, nor did they exploit the illegality in any way, we stated that “where the police conduct, although illegal, neither provoked the defendant into revealing the evidence seized nor was designed to lead to the discovery of any evidence, the purpose of the exclusionary rule would not be served by granting the motion to suppress.” (People v Boodle, supra, at p 405.)
Defendant’s further contention that the search warrant itself was invalid is wholly without merit. CPL 690.35 (subd 3, par [a]) authorizes the court to issue a 24-hour warrant — i.e., a warrant executable at any time of the day or night, if there is reasonable cause to believe that it cannot be executed between the hours of 6:00 a.m. and 9:00 p.m. Since the challenged warrant was signed at approximately 8:30 p.m. and defendant’s apartment was approximately a 30-minute drive from the courthouse, the finding below that there was reasonable cause to believe that a 24-hour warrant was necessary is amply supported by evidence in the record. Furthermore, the description in the search warrant of the premises to be searched as 398 *39 Cornelia Street, top floor, Brooklyn, New York, was adequate.
Accordingly, the order of the Appellate Division should be reversed and the case remitted to the Appellate Division, Second Department, for determination of the facts. (CPL 470.25, subd 2, par [d]; 470.40, subd 2, par [b].)

. The validity of a warrant and search depends on whether the untainted information, considered by itself, establishes probable cause for the warrant to issue. (Franks v Delaware, 438 US 154; People v Plevy, 52 NY2d 58.)

. Because we hold that there was no causal nexus between the seizure of the evidence and the officers’ initial entry into defendant’s apartment, we do not reach the question whether exigent circumstances justified that entry. For purposes of our decision today, we assume without deciding that the initial entry by the police was illegal.

. Defendant also relies on United. States v Griffin (502 F2d 959, cert den 419 US 1050). Griffin, however, is factually distinguishable from the case on appeal in that the police in Griffin discovered contraband after illegally entering the defendant’s apartment but before the police officers returned with a valid search warrant. Under those circumstances, the required causal nexus between the illegality and seizure of the evidence is readily apparent and precludes application of the independent source rule. (See United States v Edwards, 602 F2d 458, 469, n 12.) Consequently, defendant’s reliance on State v Ramos (405 So 2d 1001 [Fla]) is likewise misplaced since the Ramos court reached its decision to suppress by erroneously applying the holding in Griffin to a case similar to the instant case, where the apartment was secured but no search was conducted and no evidence was seized until after a valid search warrant was obtained.

. A similar result was summarily reached by the California Supreme Court in People v Shuey (13 Cal 3d 835).

. Our analysis of the independent source rule has been applied in similar cases in Michigan, Alaska and Colorado (People v Woodard, 111 Mich App 528; Cruse v State, 584 *38 P2d 1141 [Alaska]; People v Barndt, 604 P2d 1173 [Col]; see, also, 43 ALRSd 385, 399-402), and by the United States Court of Appeals, First Circuit, in United States v Edwards (602 F2d 458,469, n 12) and the Second Circuit in United States v Segura (663 F2d 411, 416-417).