Titone, J.
(dissenting). I dissent. The issue in this case is not, as the majority suggests, whether an explicit request for such additional relief is required before a Magistrate may include authorization for a nighttime entry in an otherwise validly issued search warrant. Rather, the question is whether such authorization may be given despite the absence of allegations in the warrant application to satisfy the statutory requirements. Since I conclude that it may not, I cannot concur in the majority’s decision to uphold the denial of defendants’ suppression motions and affirm their convictions.
CPL 690.35 (3) (a) provides that an application for a search warrant may contain "[a] request that the * * * warrant be made executable at any time of day or night, upon the ground that there is reasonable cause to believe that (i) it cannot be executed between the hours of 6:00 A.M. and 9:00 P.M., or (ii) the property sought will be removed or destroyed if not seized forthwith”. Under CPL 690.45 (6), a search warrant must contain "[a] direction that the warrant be executed between the hours of 6:00 A.M. and 9:00 P.M., or, where the court has specially so determined, an authorization for execution thereof at any time of the day or night”. Presumably, the Legislature intended that such "any time” authorization be granted only when the "reasonable cause” standard set forth in CPL 690.35 (3) (a) (i)-(ii) is satisfied by the allegations in the warrant application (see, Bellacosa, Practice Commentary, McKinney’s Cons Laws of NY, Book 11A, CPL 690.35, at 380 ["(i)f the applicant wishes to have either of two exceptions authorized, the application must justify them specially, e.g. a nighttime execution or a no-knock entry”]).
In this case, it is undisputed that the warrant application contained no allegations at all indicating either that the warrant could not be executed between 6:00 a.m. and 9:00 p.m. or that the property sought might be removed or destroyed "if not seized forthwith”. Indeed, the only allegation that even remotely pertained to exigency suggested the contrary.[1]
*771 Despite the absence of any facts before the issuing Magistrate that would support an "any time” authorization, the majority has approved the warrant and the ensuing nighttime search on the grounds that the warrant was not signed until after 9:00 p.m., the whereabouts of the suspects were still unknown, the potential loss of evidence was "a real concern,” and "the recovery of that evidence was essential to the continued progress of the investigation.” However, these facts were not before the Magistrate who issued the warrant and therefore cannot logically be relied upon to validate the Magistrate’s decision. Indeed, by relying on such post hoc rationalization, the majority has, in effect, subverted the principles underlying the warrant requirement itself.
In reviewing the validity of judicially issued warrants, we have always placed great emphasis on the facts that were actually before the Magistrate (e.g., People v P. J. Video, 68 NY2d 296, 305-307; People v Hanlon, 36 NY2d 549). The operative principles are simply stated. To encourage the use of warrants, which involve the interposition of a detached and neutral Magistrate’s judgment, appellate courts are instructed to afford deference to the Magistrate’s determinations (e.g., People v Elwell, 50 NY2d 231; People v Hanlon, supra, at 558-559; see, People v Johnson, 66 NY2d 398, 406). "The duty of an appellate court, reviewing a magistrate’s determination, is to do no more than insure that there was a substantial basis for the magistrate’s conclusion” (People v Johnson, supra, at 405). In this scheme, the requirement that all of the necessary facts actually be placed before the Magistrate serves the twin functions of assuring that the necessary determination is made by a judicial rather than a law enforcement officer and furnishing an "objectively verifiable” basis for review (see, People v P. J. Video, supra, at 307; People v Potwora, 48 NY2d 91, 94; People v Hanlon, supra, at 559; see also, People v Tambe, 71 NY2d 492). By dispensing with that requirement and substituting its speculative theories for the actual motives of the officers, the majority has effectively circumvented the entire warrant application process, thereby defeating its salutary purpose.
In support of its holding, the majority relies principally upon People v Arnau (58 NY2d 27, 38), in which the court upheld "an any time” search authorization despite the absence of a request or specific allegations in the warrant *772 application.[2] In that case, we stated only that "[s]ince the challenged warrant was signed at approximately 8:30 p.m. and defendant’s apartment was approximately a 30-minute drive from the courthouse, the finding below that there was reasonable cause to believe that a 24-hour warrant was necessary is amply supported by evidence in the record” (id.). Arnau is clearly distinguishable from this case, however, since in Arnau there were police officers holding the suspect and his wife handcuffed in their apartment and waiting for their colleagues to bring back a warrant at the time the application was made. While this court’s opinion did not say as much, this circumstance, which may well have been known to the issuing Magistrate, was, in all likelihood, the determinative factor.
In any event, whatever the underpinnings of the brief reference to this issue in Arnau, it cannot seriously be argued that the decision stands for the startling proposition that a warrant containing an "any time” search authorization may be issued even when the warrant application does not establish the requisite "reasonable cause to believe that (i) [the warrant] cannot be executed between the hours of 6:00 A.M. and 9:00 P.M., or (ii) the property sought will be removed or destroyed if not seized forthwith” (CPL 690.35 [3] [a]). Such an interpretation of the holding in Arnau would, quite simply, nullify the statute as well as the underlying legislative policy to impose specific restrictions on nighttime searches, a policy which has been in existence since at least 1881 (see, L 1881, ch 442; cf., People v Taylor, 73 NY2d 683, 689 ["conduct cannot be considered as in 'substantial compliance’ with statutory standards when the legislative purposes in adopting the statute have not been met”]).
Finally, contrary to the People’s argument, the remedy of suppression is appropriate notwithstanding that the flaw in the warrant is derived from a statutory rather than a constitutional command. Clearly, CPL 710.20, which directs suppression when tangible property was obtained "by means of an *773 unlawful search and seizure”, is not, by its terms, limited to constitutional wrongs. Moreover, we have recently held that violations of statutes that exist to implement constitutional guarantees should be remedied by suppression (People v Taylor, supra, at 690-691; see also, People v Crandall, 69 NY2d 459 [directing suppression hearing for violation of CPL 690.40 (3)]). Similarly, I would hold that violations of statutes like CPL 690.35 (3) (a), which could have no other logical purpose than to supplement or elaborate upon the basic constitutional privacy guarantee (see generally, Jones v United States, 357 US 493, 498 ["it is difficult to imagine a more severe invasion of privacy than the nighttime intrusion into a private home”]), should also result in suppression (cf., People v Sampson, 73 NY2d 908 [suppression not available for violations of statute governing out-of-State arrests]; People v Harris, 48 NY2d 208 [suppression not available for violation of CPL 140.50 (3)]).
For all of these reasons, I would reverse the orders of the Appellate Division, direct the suppression of the evidence discovered as a result of the execution of the warrant, vacate defendants’ guilty pleas and, finally, remit for further proceedings on the indictments. Inasmuch as the majority has instead determined that the orders appealed from should be affirmed, I must, respectfully, dissent.
Chief Judge Wachtler and Judges Simons, Kaye, Alexander, Hancock, Jr., and Bellacosa concur; Judge Titone dissents and votes to reverse in an opinion.
Orders affirmed in a memorandum.

. The officer who applied for the warrant averred that the owner of the building in which the apartment to be searched was located had given investigating police officers a key to the apartment earlier in the day, had since "kept watch over said apartment” and had given assurances that "no one has exited or entered said apartment.”

. The majority has also cited People v Rose (31 NY2d 1036), in which this court affirmed an Appellate Division order which upheld a search conducted pursuant to special judicial "any time” authorization. Since we affirmed, without opinion, the basis for our decision in Rose cannot be settled with any degree of certainty. Nonetheless, it cannot be ignored that, as the dissenting opinion makes clear, the warrant application, which expressly sought no-knock authority, included at least some allegations indicative of exigency (see, id., at 1037-1039 [Jones, J., dissenting]). Accordingly, Rose is not adequate authority for the holding in this case, where no indicia of exigency at all are present.