■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v JAMES ROSSI, Appellant.—Judgment, Supreme Court, New York County (James Leff, J.), entered October 29, 1990, convicting defendant, after a bench trial, of the crimes of promoting gambling in the first degree (Penal Law § 225.10 [1]), possession of gambling records in the first degree (Penal Law § 225.20 [1]), and possession of a gambling device (Penal Law § 225.30 [2]), and sentencing him on the promoting gambling count to pay a $5,000.00 fine and the mandatory assessment, and to an unconditional discharge, and on the possession of gambling records and possession of a gambling device counts to an unconditional discharge on each count, is affirmed.

On December 3, 1988, defendant was arrested, during the course of an investigation, by the Manhattan South Public

Morals Division (PMD) of the New York City Police Department (Department), of illegal gambling activities, allegedly being conducted in a commercial office building (premises), located at 575 Eighth Avenue, New York County.

Thereafter, in a three count indictment, filed May 17, 1989, a Grand Jury charged defendant, and Messrs. Alfred Paccione and Alfred Sollecito, with committing the crimes of promoting gambling in the first degree, possession of gambling records in the first degree, and possession of a gambling device.

Following arraignment, pleas of not guilty, the completion of motion practice, and the execution of waivers of trial by jury, in August 1990, a bench trial of the defendant and his two co-defendants commenced.

The People's principal witness was Sergeant George McFadden (Officer McFadden), who had been a member of the Department for more than seventeen years. Officer McFadden testified, in substance, that, prior to the time of defendant's arrest, he had been assigned to the PMD for approximately one year, immediately prior to that assignment he had been trained to investigate, *inter alia,* cases involving illegal sports wagering and bookmaking, and, thereafter he had directed ten illegal gambling investigations and had assisted on more than twenty others.

In the late fall of 1988, Officer McFadden stated that, as a result of information received from Florida law enforcement authorities, indicating that a certain New York City telephone number was being used to receive illegal gambling wagers, members of the Department contacted the telephone company and learned that the address assigned to that telephone number was located on 23rd Street, Manhattan, and, when he went to that location, he discovered that the subject calls were being forwarded from there to Room 406 of the premises.

Subsequently, on Friday, December 2, 1988, Officer McFadden visited the premises twice, during the hours when, according to his police experience, bookmaking would be most active. While on the first visit, between noon and 2:00 P.M., he overheard no sound of activity emanating from inside Room 406, and on his second visit, between 6:00 P.M. and 7:00 P.M., as he listened through the door of that room, he overheard telephones ringing, a clicking noise and male voices. In fact, he heard one voice giving a "line", or point spread, on specific sporting events, involving Seattle, the Nets and the Giants, and apparently a bet was accepted on the Giants for a "dime", meaning a thousand dollars.

After leaving those premises, Officer McFadden, *inter alia,* consulted the "Nevada Sports Line", a published booklet, listing the names of different sports teams, and providing the point spreads established by the casinos in Nevada for different sporting events, and point spreads contained in that publication coincided with point spreads that he had overheard being referred to in Room 406.

Based upon his investigation, the following day, Saturday, December 3rd, Officer McFadden obtained a warrant to search Room 406, and later that same day, at around 6:00 P.M., he, together with several other officers, entered the premises to execute said warrant. When they reached the fourth floor, which, besides Room 406, contained eight to ten other offices, Officer McFadden listened through the doors of those other offices, and, since he heard no activity, he concluded that they were empty. In contrast, when he listened at the door to Room 406, he heard a telephone ringing, a clicking noise and a male voice. Thereafter, Officer McFadden and the accompanying officers stationed themselves in a stairwell, some 15 feet away from Room 406. Subsequently, while the officers waited there, Officer McFadden testified that he heard someone exit a room, and he believed that person came from Room 406, since his earlier check had indicated all the other offices were empty. As that person, who was later identified as the defendant, walked down the fourth floor hallway, and passed where the officers were stationed, they identified themselves as police officers and arrested him.

Thereafter, Officer McFadden testified that the officers took defendant with them, when they executed the search warrant, by entering Room 406 through the front door, which was open.

The dimensions of Room 406 were about eight by twelve feet. Officer McFadden stated that there was a television set in the corner, a desk with papers on it, eight tape recorders containing cassette tapes were on the floor, and those tape recorders were connected to a box, which was wired to five telephones. In the middle of the room there was a large, black table, on top of which were the five telephones, a "validator clock", line sheets and tally sheets. Additional cassette tapes, line sheets and tally sheets were in a box on the floor. Around the table were four or five chairs, and on the table were 137 time-stamped betting slips, piled in groups in front of each chair.

Officer McFadden testified that three of those chairs were

occupied, by the two co-defendants, who were talking on the telephones, and a third man named Mr. Lettena. Further, Officer McFadden stated that the defendant sat down in one of the empty chairs, which had a jacket hanging on the back of it, and, the defendant picked up that jacket and put it on, when he, together with the co-defendants and Mr. Lettena, later left the premises with the officers.

While the police officers were still in the room, the telephones continued to ring, and when Officer McFadden answered one of them, the caller attempted to place a bet.

Admitted into evidence as People's exhibits were the telephones, tape recorders, "validator clock", line sheets, tally sheets, cassette tapes, and betting slips.

Besides Officer McFadden, two other PMD Officers testified for the People.

First, Sergeant Vincent Didonato stated, in pertinent part, that he had listened to some of the tapes that had been removed from inside the tape recorders, and the information recorded on those tapes corresponded with the information contained on the recovered betting slips. Further, he testified that recorded on the 137 seized betting slips were approximately 446 wagers, amounting to approximately $144,880.00.

Second, Sergeant Daniel Hoffer stated, in pertinent part, that in his expert opinion, on the basis of, *inter alia,* examination of the recovered line sheets and tally sheets, Room 406 was a standard bookmaking office, designed to receive bets by telephone. Further, Sergeant Hoffer testified that a "validator clock" is usually used in bookmaking operations to record the time a bettor places a bet on a horse, so that the bookmaker can verify that the bet was placed before the race began.

Criminal Term, after hearing the testimony, and examining the evidence, found the defendant, as well as his co-defendants, guilty of all counts, and sentenced defendant, as mentioned *supra.*

On appeal, the defendant contends that there was no probable cause to justify his arrest, and therefore the evidence, consisting of the gambling paraphernalia, recovered in Room 406, and the testimony concerning the jacket, should have been suppressed as the product of an illegal arrest. We disagree, since the recovered gambling paraphernalia, and the testimony about the jacket, resulted solely from the execution of a search warrant, whose validity defendant does not contest, and not as a result of defendant's arrest *(United States v Crews,* 445 US 463, 474 [1980]; *People v Arnau,* 58 NY2d 27, 35 [1982], *cert denied* 468 US 1217 [1984]).

The United States Supreme Court, in *United States v Crews* *(supra,* at 474), stated that "the illegality of [defendant's] detention cannot deprive the Government of the opportunity to prove his guilt through the introduction of evidence wholly untainted by the police misconduct". Similarly, the Court of Appeals of this State, in *People v Arnau (supra,* at 35), stated "that where the evidence sought to be suppressed is the product of an independent source entirely free and distinct from proscribed police activity, it should be admissible and not subject to a per se rule of exclusion based solely on the unlawful conduct".

Second, the defendant argues that he was not proven guilty beyond a reasonable doubt, and that at most the People merely showed that he was present in the room. To the contrary, based upon our review of the record, and viewing the evidence in the light most favorable to the People *(People v Contes,* 60 NY2d 620 [1983]), we find that Criminal Term was justified in finding the defendant guilty of being a participant in the flourishing illegal gambling activities being conducted in Room 406.

The dissent cites the cases of *People v Lunsford* (46 AD2d 612 [1974]) and *People v Diaz* (54 AD2d 543 [1976]) in support of the contention that the defendant's guilt was not proven beyond a reasonable doubt. After examining those cases, we find that they are readily distinguishable. While we agree with this Court's holding in the case of *People v Lunsford (supra),* wherein it was held that the mere presence of the defendant in that case in a residential apartment, where gambling records were found, was insufficient to establish his guilt beyond a reasonable doubt, we note that herein the facts are vastly different, since they conclusively demonstrate more than defendant's mere innocent presence in Room 406, where a highly sophisticated bookmaking operation was being conducted. The evidence requires the appropriate conclusion that the defendant was an active participant. Further, the case of *People v Diaz (supra)* involved a conviction for the crimes of grand larceny in the second degree and illegal possession of a vehicle identification number plate, and not a conviction for gambling offenses.

In reinstating a conviction for the crimes of promoting gambling in the first degree, and for the possession of gambling records in the first degree, a unanimous Appellate Division significantly stated, in pertinent part, "[t]he evidence indicates that the verdict was based on more than defendant's 'mere presence' at the time the apartment was searched (cf.

*People v Lunsford,* 46 AD2d 612; *People v Diaz,* 54 AD2d 543). There was sufficient evidence, both direct and circumstantial, to connect defendant with the gambling operations * * * Although defendant was never seen actually receiving a wager, he was seen passing from the storefront to the apartment building on several occasions, with slips of white papers in his hand * * * Considering all of the facts in this case, including the presence of the policy slips generally associated with an illegal gambling operation, it was reasonable for the jury to infer that defendant was an active participant in the gambling operations" *(People v Fortunato,* 89 AD2d 610, 610-611 [1982]).

Finally, defendant contends that Criminal Term erred in denying, without a hearing, his speedy trial motion (CPL 30.30). After examining the record, since "we cannot say that the trial court's decision to deny defendant's statutory speedy trial motion without a full evidentiary hearing was improper", we reject defendant's contention as meritless *(People v Lomax,* 50 NY2d 351, 358 [1980]; *see also, People v Gruden,* 42 NY2d 214, 217-218 [1977]). Concur—Sullivan, J. P., Ross and Asch, JJ.

Milonas and Smith, JJ., dissent in a memorandum by Smith, J., as follows: Defendant's arrest was without probable cause and the evidence was insufficient to establish his guilt beyond a reasonable doubt. I therefore dissent.

Defendant was convicted, after a bench trial, of promoting gambling in the first degree (Penal Law § 225.10 [1]), possession of gambling records in the first degree (Penal Law § 225.20 [1]), and possession of a gambling device (Penal Law § 225.30 [2]). The law sets forth these offenses as follows:

"§ 225.10 Promoting gambling in the first degree.

"A person is guilty of promoting gambling in the first degree when he knowingly advances or profits from unlawful gambling activity by:

"1. Engaging in bookmaking to the extent that he receives or accepts in any one day more than five bets totaling more than five thousand dollars * * *

"Promoting gambling in the first degree is a class E felony."

"§ 225.20 Possession of gambling records in the first degree.

"A person is guilty of possession of gambling records in the first degree when, with knowledge of the contents thereof, he possesses any writing, paper, instrument or article:

"1. Of a kind commonly used in the operation or promotion of a bookmaking scheme or enterprise, and constituting, re-

flecting or representing more than five bets totaling more than five thousand dollars * * *

"Possession of gambling records in the first degree is a class E felony."

"§ 225.30 Possession of a gambling device.

"A person is guilty of possession of a gambling device when, with knowledge of the character thereof, he manufactures, sells, transports, places or possesses, or conducts or negotiates any transaction affecting or designed to affect ownership, custody or use of * * *

"2. Any other gambling device, believing that the same is to be used in the advancement of unlawful gambling activity * * *

"Possession of a gambling device is a class A misdemeanor."

The evidence adduced at trial established, *inter alia,* that the defendant was arrested without a warrant while he was lawfully walking in the public hallway of an office building. The arrest was based solely upon the arresting officer's belief that the defendant had come from room 406, an office believed to be an illegal gambling wire room where bets were called in. The officer did not see from which of a possible ten offices the defendant had exited. He assumed that the defendant had come from the office under surveillance and for which there was a search warrant for gambling paraphernalia. This assumption was based upon the officer's failure to hear any noises coming from any office on that floor other than room 406. Clearly, at that point there was no probable cause to believe that the defendant had committed a crime. *(See, People v De Bour,* 40 NY2d 210, 223 [1976]; CPL 140.10.)

Upon his arrest, the defendant was taken into room 406, marked as Marvin Seigal Hardware, which the evidence established was in fact an illegal gambling wire room. The room was approximately eight by twelve feet and was furnished with a large table with four or five chairs around it. There was a telephone connected to a tape recorder in front of each chair. Various recognizable gambling paraphernalia was found: betting slips, tally sheets, and line sheets. Three men were found seated at the table in room 406. Two men were using the telephone; they were co-defendants at trial. Defendant took a seat at the table in a chair with a jacket on the back. When he departed, defendant put the jacket on.

The testimony at trial further revealed that the defendant was never observed using any telephone in room 406 or writing anything down therein. No handwriting or fingerprint

evidence was offered against the defendant. There also was no evidence, such as a lease, establishing any interest in the premises attributable to the defendant.

First, there was no probable cause to arrest the defendant in the hallway. Thus the jacket taken from the chair in the room where defendant was taken should have been suppressed as fruit of the poisonous tree. *(See, Wong Sun v United States,* 371 US 471 [1963]; *Dunaway v New York,* 442 US 200 [1979]; *People v Johnson,* 129 AD2d 739 [1987]). When the jacket is suppressed, there is no evidence against the defendant.

Moreover, the evidence is insufficient to establish beyond a reasonable doubt that he promoted gambling by receiving or accepting proscribed bets and that he possessed any gambling records or devices. *(People v Lunsford,* 46 AD2d 612 [1974]; Penal Law § 225.10 [1]; § 225.20 [1]; § 225.30 [2]; *see also, People v Diaz,* 54 AD2d 543 [1976].)

In *People v Lunsford (supra),* the convictions of three defendants for promoting gambling and possession of gambling records were reversed where the defendants were not the subjects of a search warrant, there was no attempt to prove who leased the premises, and the defendants were merely present in the apartment.

In *People v Diaz* defendant's conviction of grand larceny in the second degree and illegal possession of a vehicle identification number plate was reversed. The evidence revealed that a stolen car was inside of a garage in the process of being stripped. Two men were inside the vehicle and were stripping it. There were several license plates from other vehicles nearby. Defendant was not shown to be stripping the car or in actual possession of the license plates. The court concluded that his mere presence was insufficient to establish his guilt.

Finally, defendant here was not the subject of the search warrant.

Accordingly, I would reverse the conviction and dismiss the indictment.