■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v WILLIAM RICHARDSON, Appellant. [781 NYS2d 381]—

Spain, J. Appeal from a judgment of the County Court of Rensselaer County (McGrath, J.), rendered July 10, 2002, upon a verdict convicting defendant of the crimes of burglary in the first degree (two counts), criminal possession of a weapon in the second degree, assault in the second degree, reckless endangerment in the first degree and criminal use of a firearm in the first degree.

Defendant's convictions, following a second jury trial, for first degree burglary (two counts), second degree assault and related crimes, stem from a June 18, 2001 afternoon home invasion in which defendant, accompanied by at least two other men, unlawfully entered a home on Lord Avenue in the Town of Brunswick, Rensselaer County, assaulting and shooting one of the occupants. At the first trial, the jury had been unable to agree on a verdict and a mistrial was declared. At the second trial, the victim testified that defendant—who he identified in court—entered his kitchen, shoved him against the refrigerator and then to the floor, placed a loaded gun to his head, threatened to kill him and struck him. In response to the victim's resistance and repeated efforts to stand up and move the gun away from his head, defendant eventually cornered him in the bathroom, shot him in the arm and fled with his accomplices to defendant's vehicle, pursued by the victim who successfully recorded all but the last number in the license plate before it sped away and reported that information and descriptions of the vehicle and shooter to police. One of defendant's accomplices (who had not testified at the first trial) testified that he, defendant and defendant's cousin went to the victim's house planning to commit a burglary for drugs and that defendant had hit the victim and shot him before they fled in defendant's car. Defendant testified that he followed the others into the house so he would be able to make drug purchases there on his own in the future, but denied any role in the shooting or assault, testimony which was impeached on cross-examination by his testimony at the first trial that he never entered the victim's house but waited outside.

Within an hour (around 5:00 P.M.), defendant was ap-

prehended in the City of Troy, Rensselaer County, while driving his vehicle, which was registered to him and insured in his name, and taken into custody by the State Police who provided *Miranda* warnings and transported him to their barracks. During periodic questioning, defendant denied involvement in the home invasion but admitted that he was the only person to drive his car that afternoon and he had no alibi after approximately 3:00 P.M. At approximately 10:00 P.M., while defendant was being questioned, the victim viewed a photo array and indicated that the picture of defendant "looked like [the assailant]," but that he "didn't want to say exactly it was him" until he saw him in person. Informed shortly after 10:00 P.M. that the victim had not made a positive identification from the photo array, State Police investigators—aware that defendant was on parole—decided to postpone charging him for these crimes, which were contained in an unsigned felony complaint. Instead, they continued to detain defendant and contacted his parole officer, hoping to continue his detention based on a parole violation while they further investigated these crimes.

Although there was no outstanding parole warrant, defendant's parole officer came to the State Police barracks, obtained defendant's keys, searched his residence and, upon discovering certain weapons and a beeper—possession of which constituted a parole violation—issued a notice of parole violation and signed a warrant for his arrest during the early morning hours of June 19, 2001. This led to defendant's arrest on parole violations and transport to the county jail, where his clothing and shoes were secured by jail personnel. Although not admitted into evidence at his first trial, at the second trial the People submitted testimony that subsequent DNA testing on these items indicated with near certainty that they contained blood from the victim and defendant. The next day, June 20, 2001, a lineup was conducted at which the victim immediately identified defendant as the shooter. On June 22, 2001, pursuant to a search warrant, defendant's clothing and shoes were taken from the jail into custody by the State Police. A sealed indictment was handed up approximately one month later containing the offenses for which defendant has been convicted and sentenced to concurrent terms of imprisonment, the maximum of which are 25-year terms on each of the first degree burglary counts and the criminal use of a firearm in the first degree count.

Defendant now appeals, primarily challenging County Court's *Wade* ruling permitting the victim to make an in-court identification and the court's ruling that the People could introduce defendant's pants and shoes, finding the taint of the illegal detention had been "attenuated."

Prior to the *first* trial, as relevant here, defendant moved to suppress his oral and written statements to police and the lineup identification, and to preclude any in-court identification of him by the victim. The People stipulated not to admit defendant's clothing, as the scientific test results were not yet available. After a combined *Wade, Mapp* and *Huntley* hearing, County Court ruled that police had probable cause to take defendant into custody around 5:00 P.M. on June 18, 2001, to search his car pursuant to a search warrant, and that defendant received *Miranda* warnings and made voluntary statements to police while in custody, which were admissible. However, the court held that when the State Police, upon learning of the inconclusive results of the photo array (around 10:00 P.M.), made the decision not to charge defendant with these crimes, "there was no legal basis to hold defendant." Thus, defendant's detention thereafter became illegal and "any fruits as a result of that illegal custody must be suppressed." Further, while suppressing the lineup identification made during the illegal detention, the court found that the victim had a sufficient independent basis for identifying defendant "based upon his clear observation of defendant" during the crime, and permitted the victim to make an in-court identification.

After the first trial ended in a mistrial, the People sought permission to admit into evidence at the second trial defendant's clothing and the results of the DNA testing. Defendant opposed, arguing that the clothing should be suppressed as the product of his illegal detention, i.e., the fruits of the poisonous tree. After a supplemental *Mapp* hearing, County Court denied defendant's motion to suppress this evidence ruling that the search warrant was supported by sufficient reasonable cause, even without the tainted and suppressed lineup identification. The court also rejected defendant's claim that the clothing must be suppressed as the fruit of the poisonous tree, finding that the prior police illegality—i.e., the June 19, 2001 illegal detention—had been "attenuated" by the subsequent attainment of a valid search warrant which was supported by sufficient untainted evidence, relying on the attenuation factors discussed in *People v Harris* (72 NY2d 614, 620 [1988], *revd* 495 US 14 [1990]).

First, we cannot agree with defendant's contention that County Court, having suppressed the lineup identification as the product of the illegal detention, erred in denying his motion to preclude the victim from making an in-court identification. The victim's testimony at the suppression hearing provided clear and convincing evidence to establish that he had an unobstructed and "eye to eye" view of defendant for several

minutes in the well-lit kitchen during which his attention was continuously and exclusively focused on defendant, amply supporting the court's determination that the victim's in-court identification had an independent source, untainted by police procedures (*see People v Jones*, 301 AD2d 678, 679-680 [2003], *lv denied* 99 NY2d 616 [2003]; *People v Muhammad*, 217 AD2d 773, 773 [1995], *lv denied* 86 NY2d 799 [1995]; *cf. People v Gethers*, 86 NY2d 159, 163 [1995]). Further, in the hours after the crime, while not making a positive identification, the victim had selected defendant's photo (taken the day of the crime) as the one which "looked like [the assailant]," requesting to see his whole body in person to be sure, and indicating that he knew he could identify him if he saw him in person. The subsequent lineup was not tainted by suggestiveness but, rather, was suppressed as the product of an illegal detention (*cf. People v Ramos*, 42 NY2d 834, 834 [1977]; *People v Cobenais*, 39 NY2d 968 [1976]; *People v Dobranski*, 112 AD2d 541, 542 [1985], *lv denied* 66 NY2d 614 [1985]). Defendant's reliance upon the discrepancy between the victim's initial estimation of his assailant's height and weight and defendant's actual measurements is improperly premised upon trial evidence (*see People v Gonzalez*, 55 NY2d 720, 721-722 [1981], *cert denied* 456 US 1010 [1982]; *People v Franklin*, 288 AD2d 751, 753-754 [2001], *lv denied* 97 NY2d 728 [2002]) and, in any event, does not undermine the court's independent source determination.

Next, we reject defendant's claim that County Court erred in denying suppression of his clothes. The issue is whether the exclusionary rule applies and requires suppression of this physical evidence as the product of illegal police activity (i.e., the illegal detention), as defendant contends, or whether one of the general exceptions to the exclusionary rule applies, namely attenuation (*see People v Harris*, 77 NY2d 434 [1991]), independent source (*see People v Arnau*, 58 NY2d 27, 32-33 [1982]) or inevitable discovery (*see People v Turriago*, 90 NY2d 77, 85 [1997]; *see also* 5 La Fave, Search and Seizure § 11.4, at 234 [3d ed]; *United States v Crews*, 445 US 463, 470, 470 n 11 [1980]).

To begin, we agree with County Court's ruling that after excising the tainted information relied upon in obtaining the warrant—the suppressed lineup identification—the search warrant used to seize defendant's clothing was nevertheless supported by sufficient untainted information, acquired prior to the illegal detention, to provide reasonable cause for its issuance (*see People v Arnau, supra* at 33, 33 n 1; *see also People v Harris*, 62 NY2d 706, 708 [1984]; *People v Binns*, 299 AD2d 651, 654 [2002], *lv denied* 99 NY2d 612 [2003]). That is, the search

warrant was based upon such properly obtained evidence as the victim's June 18, 2001 deposition describing the incident, the assailant, his vehicle and license plate, as well as the affidavit of a State Trooper documenting the circumstances of defendant's apprehension (i.e., driving the vehicle described by the victim registered in defendant's name and wearing clothing and having the appearance described by the victim, and defendant's admission that he was the only one who drove the car that day and had no alibi at the time of the shooting).

Finding the search warrant valid, we turn to the question of whether the physical evidence seized pursuant to that search warrant is rendered inadmissible on the ground that its production was causally related to illegal police conduct, i.e., whether seizing it during the illegal detention compels the conclusion that the evidence was "come at by exploitation of that illegality" requiring its suppression as poisoned fruit (*Wong Sun v United States*, 371 US 471, 488 [1963] [internal quotation marks and citation omitted]). In denying suppression, County Court relied upon the traditional attenuation exception to the exclusionary rule, which we find inapplicable. That exception focuses on the presence or absence of "free will" or voluntariness regarding a defendant's (or a witness's) statements, consent or acts which follow illegal police conduct; thus, the attenuation inquiry resolves whether the causal connection between the police misconduct and the later discovery of the challenged evidence is so far removed as to dissipate the taint (*see Brown v Illinois*, 422 US 590, 602-604 [1975]; *People v Harris*, 72 NY2d 614 [1988], *supra*; *People v Borges*, 69 NY2d 1031, 1032-1033 [1987]; *People v Conyers*, 68 NY2d 982, 984 [1986]; *People v Rogers*, 52 NY2d 527 [1981], *cert denied* 454 US 898 [1981]; *People v Vaughn*, 275 AD2d 484, 488 [2000], *lv denied* 96 NY2d 788 [2001]; *People v Moore*, 269 AD2d 409 [2000], *lv denied* 94 NY2d 951 [2000]).

However, applying the more appropriate independent source exception to the exclusionary rule, we find suppression of the physical evidence was not required here, because it was seized pursuant to a valid search warrant which was based upon sufficient untainted information obtained by the State Police *prior to and independent* of the illegal detention (*see People v Arnau, supra* at 33; *see also Segura v United States*, 468 US 796 [1984]; *People v Silverstein*, 74 NY2d 768, 769-770 [1989], *cert denied* 493 US 1019 [1990]; *People v Burr*, 70 NY2d 354, 361-363 [1987]; 35 Carmody-Wait § 172:3303 [2004]). County Court's unchallenged and supportable finding is that, prior to the illegal detention, police had probable cause to arrest defendant for

these crimes, and the untainted evidence underlying the search warrant would have authorized its issuance before the unrelated illegal detention even began. Under these facts, there was in actuality no causal relationship between the illegal detention and the subsequent seizure of the clothing pursuant to a valid search warrant, i.e., the physical evidence was the product of the valid search warrant and not of the illegal detention, and the source of the warrant was independent of the illegal detention (*see People v Arnau, supra* at 33; *People v Tariq*, 170 AD2d 716, 717 [1991]).

Defendant's principal contention that because the illegal detention provided the opportunity for his clothing to be secured at the jail it must be suppressed, i.e., "but for" his illegal detention the evidence may have been sequestered or destroyed, has been rejected both as "pure speculation" and as premised upon the erroneous supposition that there is a right to destroy evidence (*see Segura v United States, supra* at 815-816; *see also* 3 Constitutional Rights of the Accused 3d, § 12.6—*The Fruit of the Poisonous Tree*; 5 La Fave, Search and Seizure § 11.4 [d], at 277 [3d ed]). While such a "but for" finding is a prerequisite to exclusion of evidence as a "fruit," it does not follow that evidence is *automatically* a fruit of the poisoned tree because it would not have come to light "but for" the illegal police actions; rather, the dispositive inquiry is whether the challenged evidence is come at by the *exploitation* of that illegality so as to make it the *product* of that illegality (*see Segura v United States, supra* at 815; *Wong Sun v United States, supra* at 487-488; *People v Burr, supra* at 362; *People v Arnau*, 58 NY2d 27, 32 [1982], *supra*; *People v Rogers, supra* at 535; *see also United States v Crews*, 445 US 463, 471 [1980], *supra*; *Silverthorne Lbr. Co. v United States*, 251 US 385, 392 [1920]). Here, there was no proof adduced at the suppression hearings that defendant's illegal detention—which was designed to hold defendant as the investigation of these crimes continued—was in any respect undertaken for the purpose of discovering evidence on him, to secure his clothing or to obtain a search warrant (all of which could have occurred prior to that detention based upon available information) so as to support the conclusion that the police came about the evidence by exploiting the detention (*see People v Rogers, supra* at 535). Thus, the clothing was not the fruit of the poisonous tree and was properly admitted at trial (*see People v Arnau, supra* at 34).

Defendant's remaining contentions are similarly unpersuasive. It was not improper for the prosecutor to elicit on cross-examination—for impeachment purposes—the fact that defen-

dant testified differently and inconsistently at his "previous trial" and his motive for doing so (see CPLR 4514; CPL 60.10; *People v Wise*, 46 NY2d 321, 327-328 [1978]; *People v Greene*, 306 AD2d 639, 641-642 [2003], *lv denied* 100 NY2d 594 [2003]; *People v Mahone*, 206 AD2d 263, 264 [1994], *lv denied* 84 NY2d 869 [1994]). Defendant's claims, by counsel and pro se, regarding prosecutorial misconduct at trial and during closing arguments are unpreserved but, in any event, have been examined and determined to lack any merit, as have his remaining points for reversal.

Crew III, J.P., Mugglin, Rose and Kane, JJ., concur. Ordered that the judgment is affirmed.